UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

KRAFT FOODS GLOBAL, INC.,                 :

            Plaintiff,                 :

    -against-                              :    INDEX NO.  10 CIV 09085 (Seibel)

STARBUCKS CORPORATION,                    :

          Defendant.                 :

-------------------------------------- X

## DECLARATION OF MIKE PRCHLIK

I, Mike Prchlik, declare based on personal knowledge and under penalty of perjury that the following is true and correct:

1.     I am currently the Director, Premium Coffee, Tea and Tassimo for Kraft Foods Global, Inc. ("Kraft") responsible for sales planning for Kraft's U.S. coffee business.  I have held this position since 2002, and I have been employed by Kraft since 1983.   Prior to being Director, Premium Coffee, Tea and Tassimo, I was Customer Marketing Manager, Club Region.

**Kraft Sales in the CPG Category Generally**

2.     As Director, Premium Coffee, Tea and Tassimo, my job responsibilities include delivering the top line, bottom line and share goals on Kraft's coffee brands including the Starbucks partnership brands; development of sales strategies, priorities and execution for the Kraft coffee portfolio; communications with Kraft's sales force on coffee related information; Trade deployment and execution; and, Sales liaison to Starbucks Coffee Company for the U.S. business.

3.      As part of my responsibility for managing Kraft's relationship with Starbucks, I am familiar with the Supply and License Agreement between Kraft and Starbucks dated March 29, 2004 ("R&G Agreement") pursuant to which Kraft owns the exclusive right to sell, market and distribute packaged Starbucks roasted whole bean and ground coffee bearing the Starbucks and Seattle's Best Coffee brands to Kraft's customer base of grocery stores and other retail food outlets, which is referred to as the consumer packaged goods or "CPG" market.

4.      The CPG market includes grocery and supermarket chains, wholesalers, club stores, mass merchandisers, distributors, drug stores and other retail food outlets.

5.      The U.S. CPG Premium Coffee segment, which is the market in which the Starbucks brands compete, is highly competitive and in 2009, it generated total U.S. (retail) sales of over $1.6 billion. [1]

6.      The Premium Coffee segment is comprised of those coffee products that are generally in a bag and made with high quality (Arabica) coffee beans. The super premium Coffee segment is comprised of those coffee products that are at the highest end of the Premium offerings.

7.      Pursuant to the terms of the R&G Agreement, Starbucks and Seattle's Best Coffee are the only super premium coffees that Kraft is able to market, distribute or sell to its U.S. customers in the CPG market.

8.      Kraft is world renowned for its strength in the CPG sector. Kantar, a prominent global retail insights and consulting firm, recently ranked Kraft's sales force No. 1 (again) among all CPG companies, including Procter & Gamble, PepsiCo, Unilever, Nestlé, Kellogg, and General Mills. To the best of my knowledge, information and belief, Kraft has devoted

---

[1]      *See,* Nielsen 4-outlet, 2009, attached hereto as Exhibit 1.

significant resources to leverage its considerable leadership and expertise in world-class CPG

Marketing, Sales, Logistics, Market Research and Innovation Strategy to Starbucks' benefit

throughout the course of the companies' twelve (12) year exclusive contractual arrangement.

9.      In the 27 years that I have been employed by Kraft, I have seen the importance

and value that Kraft places on its customer relationships.  Kraft considers its deep relationships

with its customers to be one of its unique attributes that distinguishes Kraft from its competitors.

As a result, Kraft continuously works to further develop and protect these customer relationships

and has had a Customer Business Team structure for over fifteen (15) years.

10.      Based upon my investigation and upon information and belief, in 1998, Starbucks

CPG business had revenues of approximately $50 million with a product portfolio limited to 16

unique products ("SKUs") in 4,000 stores spread over 12 states, two of which were test market

states.  In the 12 years since Kraft acquired its exclusive right with respect to the Starbucks CPG

business, and in reliance on its exclusive right to sell, market and distribute packaged Starbucks

products in the CPG market, Kraft devoted substantial resources and leveraged its relationships

with its customers in the CPG market to grow the business to approximately $500 million in

revenue annually, with a product portfolio of over 65 SKUs sold in approximately 40,000 stores

across all 50 U.S. states.  This represents a compounded average revenue growth rate in excess

of 20%, well above the industry norm.

11.      Kraft's Sales Force is among the largest in the CPG industry.  The Kraft Sales

Force is in every state in the United States.  The majority of Kraft's Sales Representatives handle

Kraft's complete product portfolio including the Starbucks products.

12.      Starbucks U.S. CPG Coffee and Tea Products that Kraft is responsible for

accounts for approximately $500 million in sales.

**Kraft's Involvement of Starbucks Personnel in Sales of Starbucks Products**

13.     Since 2002, I have been responsible for managing Kraft's sales of Starbucks products in the U.S. and am responsible for overseeing the day-to-day sales-related aspects of Starbucks coffee products within CPG channels.  This involves, but is not limited to: (i) regular conference calls with the Starbucks sales managers responsible for Starbucks CPG Products; (ii) creation, review and overall development of sales presentations to Customers and development of sales strategy for Starbucks CPG Products; (iii) meetings with Starbucks to review major sales presentations and future sales efforts; (iv) daily communications with individuals from the Kraft sales force responsible for Starbucks CPG Products; and (v) in-person meetings with Starbucks representatives and Kraft customers carrying Starbucks CPG Products.

14.     Over the last 6 years, I have had regular contact with Larry Cronin the current Starbucks National Sales Manager (as well as other management representatives of Starbucks including Lyn Frates and Gary Jones).  I review important sales-related issues with Mr. Cronin on telephone conferences that have been conducted on nearly a weekly basis.  In addition to these scheduled telephone meetings, we communicate via email and telephone on a regular basis. In addition, I have traveled often with Mr. Cronin to Kraft customers where we have presented various initiatives.

15.     Prior to Mr. Cronin, I worked directly with Tom Clemente, who I believe previously held the title of Starbucks Vice President of Sales and Randall Alston who I believe was Director of Sales.  My contact with Tom and Randall was of a similar substance and frequency as my contact with Mr. Cronin.  Prior to Starbucks hiring Sales people into their CPG business, I dealt with Mary Theisen, whose title, at the time, was Director of Marketing, Grocery and Wholesale.

**Development of Sales Presentations for Starbucks Products**

16.     Part of my job is to assist with the development and implementation of sales presentation templates to customers relating to Starbucks Products.

17.     Typically Kraft and Starbucks work together on the development of an initiative. Then Kraft creates a draft of the presentation once all major facets of the initiative are approved. Kraft thereafter submits that draft to Starbucks for final review and approval of the presentation. Kraft strives to provide as much lead time as possible for Starbucks to approve sales presentations.  There are, however, occasions where a customer requests presentations on a quick turnaround and in those instances the submission and approval process is necessarily accelerated. I cannot recall ever purposely delaying a presentation for approval.

18.     During my tenure, Kraft has developed many sales presentations involving Starbucks Products to customers.  For Starbucks Products, these presentations have ranged from individual customer presentations that address a specific customer opportunity to large templates for major initiatives such as a new item launch.  In total, I would approximate that we develop a minimum of ten presentations annually.

19.     Kraft includes Starbucks in the review and approval process of sales presentation templates for major initiatives.  By way of example, on 5/06/10 Kraft engaged Starbucks to begin preparation for 5/19/2010 meetings with Sam's Club and Walmart.  Kraft hosted a conference call with Starbucks on 5/11/2010 and the meetings were attended by multiple Starbucks employees including Greg Price, then Vice President of Starbucks CPG.  Another recent example of customer collaboration would be the Target and Super Valu Seattle's Best Coffee appointments on 7/14/2010 and 7/15/2010 respectively.  Kraft invited Starbucks to those

meetings on June 23, 2010 and began soliciting Starbucks' input on the presentation preparation materials on June 29, 2010.  By July 9, 2010 we had a sales presentation that incorporated the feedback of Michelle Gass (President, Seattle's Best Coffee).  Both Michelle Gass and Larry Cronin accompanied Kraft to both presentations.  Since 2004, I would conservatively estimate that on average Starbucks has been invited to at least ten (10) key strategic sales presentations annually and they have attended the majority of them.

20.    Another area in which Kraft collaborates with Starbucks is in the creation of selling story templates for key initiatives.  One such initiative was the 2009 launch of 5oz and 20oz Starbucks into CPG.  Kraft led the process but collaborated with Starbucks over a three month period of time prior to finalizing and distributing to the Kraft sales force for implementation.

21.    Another example of Kraft's collaboration with Starbucks for a sales presentation related to the launch for Target stores of Starbucks Natural Fusion products, which are natural flavored coffees manufactured by Starbucks.  Kraft provided the Natural Fusion presentation to Starbucks on July 31, 2009, seven days before the presentation.  On August 4, 2009, Starbucks provided comments on the presentation and approved the presentation. [2]  At no point did Mr. Cronin, or anyone at Starbucks, complain to me that Starbucks did not have sufficient time to review the presentation.

**Introduction of Starbucks to Kraft Customers**

22.    Upon information and belief, the R&G Agreement does not require that Kraft include Starbucks on all meetings with Kraft customers where Starbucks is discussed.

---

[2]    A copy of an email from Kristine Glancy to Greg Price dated August 4, 2009 is attached hereto as Exhibit 2.

23.     Kraft has nevertheless endeavored to involve Starbucks in key customer strategic calls.

24.     Kraft has set up meetings for Starbucks with many large Kraft customers.  For example, in 2010, Kraft has initiated, organized and implemented approximately 14 meetings between Kraft's customers and Starbucks relating to sales, including meetings with WalMart, Kroger, Costco, Safeway and Meijer among others.

**Starbucks Contact with Kraft Customers and Irreparable Harm**

25.     One of Kraft's greatest assets is its strong customer relationships, relationships that Kraft has built over the course of many years.

26.     Starbucks is undermining and interfering with Kraft's customer relationships and with the reputation that Kraft enjoys among its customers.

27.     Starbucks has falsely claimed that Kraft has breached the terms of the R&G Agreement.  Indeed, on December 1, 2010 Starbucks President of Global CPG and Food Service, Mr. Hansberry stated: "The issues between us and our dissatisfaction with Kraft's performance and their failure to protect the premium equity that we have built in our brands has been ongoing. We've exercised our right to end the relationship. The matter will be resolved through arbitration. We are moving forward with our transition and we are taking every step necessary to ensure a smooth transition for our customers and our business."

28.     In a December 1, 2010 letter Starbucks President of Global CPG and Food Service, Mr. Hansberry informed Kraft that: "Unless we get clear affirmation from Kraft . . . that you will be providing full, immediate support and cooperation for a smooth transition, we will

begin contacting customers regarding the transition (effective March 1, 2011) starting December 6th, 2010." [3]

29.     Because the R&G Agreement has not been properly terminated, Kraft has continued to honor its obligations under that agreement, including the requirement that Kraft refrain from marketing, distributing and selling a super premium coffee other than Starbucks products in the CPG channels.

30.     On Monday, December 6, 2010, Starbucks sent a letter to Kraft's customers addressed "To Our Valued Customers" and stated that "effective March 1, 2011, Starbucks will assume direct distribution for the Starbucks and Seattle's Best Coffee brands, replacing Kraft Foods." [4]

31.     In blatant disregard of their contractual obligations, I am informed and believe that Starbucks sent this December 6, 2010 letter to many of Kraft's customers.  In addition to this written correspondence, I also understand and am informed that Starbucks has reached out to many of Kraft's customers both by phone and in person.

32.     On Monday, December 6, 2010, Starbucks sent a letter to Acosta wherein in pertinent part it stated: "Today, we are sending letters to customers to begin the transition process. In addition to the letters, our sales leaders are calling our top 15 customers to share this important news.  As of today, December 6, 2010, we begin our journey together to assume control over the direct distribution of the largest component of our CPG business. . . ." [5]

---

[3]     A copy of the Starbucks December 1, 2010 letter is attached hereto as Exhibit  3.

[4]     A copy of the 12.6.10 letter received by Kraft's customer, Winn Dixie, is attached as Exhibit 4.

[5]     A copy of the December 6, 2010 Starbucks letter to Acosta is attached hereto as Exhibit 5.

33.    Upon information and belief, and in direct violation of the R&G Agreement, in addition to Starbucks own communications with Kraft's customers, Starbucks has also instructed Acosta to reach out to Kraft's customers. [6]

34.    On Tuesday December 7, 2010, Kraft learned that Acosta had contacted Kraft's customer, Food Lion, and informed Food Lion that effective February 28, 2011 it will be handling the Starbucks products. [7]

35.    On Friday, December 10, 2010, Joe Welsh from Acosta asked for the "***current and future*** EDLC packets (these are essentially Kraft's confidential "trade promotion plans") as well as any other information you feel pertinent" for Kraft's customer Food Lion."[8]

36.    I am aware of widespread confusion with Kraft customers because of Starbucks actions. [9] For example, in November, Starbucks contacted Costco and made changes to merchandising proposals that Kraft had submitted, causing the customer to not know from whom to take direction. Target is another retailer that has been particularly vocal expressing their displeasure and confusion over this situation.

37.    The actions by Acosta (Starbucks newly appointed agent) have also caused confusion among Kraft's customers. For example, in a December 9, 2010 email from Acosta's Business Manager Ted Miller, to Kraft's customer Drugstore.com, Acosta advises Kraft's customer that it is "looking at all Kraft future and past promotions to get a better feel of what has

---

[6]    *See,* Exhibit 5, attached hereto.

[7]    See, December 7, 2010 email re: Food Lion, attached hereto as Exhibit 6.

[8]    *See,* December 10, 2010 email re: Acosta requesting EDLC packets, attached hereto as Exhibit 7.

[9]    See, for example, representative emails received from Kraft customers, attached collectively hereto as Exhibit 8.

been done for your business. We will be reaching out to you for appts to discuss opportunities for 2011." [10]

38.     Not only is Acosta's possession of Kraft's confidential future and past promotional programs a violation of the R&G Agreement, Acosta's improper contact with Kraft's customers is causing confusion in the marketplace as evidenced by multiple emails and phone calls from customers to Kraft. [11]

39.     Starbucks' actions also threaten to harm Kraft's preeminent "Category Captain" position with its CPG customers.

40.     Most large national retailers select a Category Captain for their coffee products. Captaincy is awarded based on multiple factors including category knowledge, resources, expertise in consumer insights and a commitment to being unbiased – putting the category above the brands that the captain represents.  The Category Captain partners with the customer to implement the strategy for the presentation of coffee on the retailer's shelves, including which coffee to sell, where and how much.

41.     Kraft holds the Category Captain position at stores representing over 60% of our total coffee volume.  The Category Captain position has inherent, unquantifiable value because, for many customers, it means that a Kraft employee is dedicated full time to focus on category management for that customer.  That relationship development allows for Kraft to serve as a valued strategic advisor to the customer and provides Kraft with insight into the customer's plans, objectives and preferences for distribution, shelf placement and shelf space.

42.     Starbucks actions subject Kraft to a risk of losing its invaluable Category Captain position with its customers.  Kraft is abiding by the R&G Agreement and, therefore, cannot

---

[10]     A copy of Acosta's December 9, 2010 email to Kraft's customer Drugstore.com is attached hereto as Exhibit 9.

[11]     See, Exhibit 8, attached hereto.

discuss future plans for its participation in the super premium coffee segment.  Starbucks actions and comments have called into question Kraft's ability to continue to supply its customers with Starbucks CPG products, despite the improper termination.  If customers believe Kraft will not have an offering in the important super premium segment, Kraft's position may be at risk.

43.     Absent injunctive relief, Starbucks' actions will continue to cause immediate, substantial and irreparable harm to not only the Starbucks CPG business that Kraft owns under the R&G Agreement but also to Kraft's reputation and relationship with its customers.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

       Executed on December 13, 2010.

Mike Prchlik