# EXHIBIT 15

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel. 215.963.5000
Fax: 215.963.5001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**William P. Quinn, Jr.**
215.963.5775
wquinn@morganlewis.com

**VIA EMAIL**

November 15, 2010

Aaron M. Panner, Esquire
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, DC 20036-3209

Re: *Supply and License Agreement dated March 29, 2004 ("Supply Agreement") the International Supply and License Agreement dated September 28, 2006, the Tassimo Supply and License Agreement, dated August 9, 2006 and the Starbucks Tassimo Supply and License Agreement, dated July 27, 2007 (collectively, the "Coffee Agreements")*

Dear Mr. Panner:

As you may know, Jeff Hansberry of Starbucks has made several attempts to engage Deanie Elsner of Kraft in "transition planning" with respect to the Supply Agreement. Mr. Hansberry's actions are surprising since, as President of Starbucks' CPG & Foodservices division, he should know that Kraft denies the validity of Starbucks' attempt to terminate the Agreement and, thus, has no intention of transitioning the business to Starbucks. Perhaps he was unaware of these facts as a result of confusion or poor communications within Starbucks' organization. We therefore ask that you ensure that Mr. Hansberry and all other Starbucks personnel with responsibilities touching upon the Supply Agreement understand that Kraft will continue to treat the Supply Agreement as remaining in effect indefinitely and expects Starbucks to fully perform its obligations under the Supply Agreement on an ongoing basis.

Please also advise your client that, with the exception of communications between and among members of the Oversight Committee acting solely in their capacity as such, all further communications relating to Starbucks' attempt to terminate the Coffee Agreements, including communications concerning the asserted grounds for termination, should be directed to me. Having decided to pursue its termination strategy through outside litigation counsel, Starbucks must now ensure that its own personnel abide by that decision and refrain from further attempts to communicate directly with Kraft.

Aaron M. Panner, Esquire
November 15, 2010
Page 2


Morgan Lewis
COUNSELORS AT LAW

Finally, as Starbucks appears to have settled on a course of action that is highly likely to lead to litigation, we presume that it has taken the steps necessary to preserve all documents and other materials in its possession, custody or control (including Electronically Stored Information within the meaning of the Federal Rules of Civil Procedure) that are, or may be, relevant to Starbucks' purported termination of the Coffee Agreements, including Starbucks' reasons and purported grounds for such termination. Please confirm that Starbucks has done so and, moreover, that the documents and other materials being preserved include, without limitation, those identified in Attachment A to this letter. Needless to say, because the Coffee Agreements provide for resort to injunction proceedings in federal court, both Starbucks and its counsel are bound by the evidence preservation obligations imposed by federal law. Kraft will seek all available sanctions for any failure to comply fully with those obligations.

Very truly yours,

William P. Quinn, Jr.

### Attachment A to November 15, 2010 Letter to Aaron M. Panner

1. All documents and other materials relating to the statements made and issues raised in the letters of Aaron M. Panner dated October 16, 2010, November 9, 2010 and November 12, 2010.

2. All documents and other materials relating to any analysis, assessment or consideration by or on behalf of Starbucks of terminating one or more of the Supply and License Agreement dated March 29, 2004, the International Supply and License Agreement dated September 28, 2006, the Tassimo Supply and License Agreement, dated August 9, 2006 and the Starbucks Tassimo Supply and License Agreement, dated July 27, 2007 (collectively, the "Coffee Agreements") including, without limitation:

    a. the date on which Starbucks first considered termination;

    b. Starbucks' consideration of available options for termination;

    c. Starbucks' strategy for termination;

    d. Starbucks' reasons for termination; and

    e. the advantages, benefits, disadvantages, risks and potential costs of termination.

3. All documents and other materials relating to any analysis, assessment or consideration by or on behalf of Starbucks of terminating the Supply Agreement pursuant to Paragraph 5(B)(ii) thereof, including, without limitation, Starbucks' analysis, assessment or consideration of:

    f. the cost to Starbucks of such termination;

    g. the Fair Market Value of the Supply Agreement (as defined therein);

    h. the procedure and/or method for determining Fair Market Value of the Supply Agreement;

    i. Starbucks' strategy for termination pursuant to Paragraph 5(B)(ii);

    j. the advantages, benefits, disadvantages and risks of termination pursuant to Paragraph 5(B)(ii);

    k. the applicability of Paragraph 5(B)(ii)(x) to such termination; and

    l. the applicability of Paragraph 5(B)(ii)(y) to such termination.

4. All documents and other materials relating to any analysis, assessment or consideration by or on behalf of Starbucks of terminating the Supply Agreement pursuant to Paragraph 5(B)(iii) thereof, including, without limitation, Starbucks' analysis, assessment or consideration of:

    a. the cost to Starbucks of such termination;

    b. Starbucks' bases for termination pursuant to Paragraph 5(B)(iii);

    c. Starbucks' strategy for termination pursuant to Paragraph 5(B)(iii); and

    d. the advantages, benefits, disadvantages and risks of termination pursuant to Paragraph 5(B)(iii).

5. All documents and other materials relating to Starbucks' assertions of material breach as set forth in the letters of Aaron M. Panner to Deanie Elsner dated October 5, 2010 and November 5, 2010, and the letter of Aaron M. Panner to Morgan Lewis dated November 12, 2010, including, without limitation:
    a. the specific acts or omissions constituting each alleged breach;
    b. the date on and manner in which Starbucks first became aware of the acts or omission allegedly constituting each alleged breach;
    c. the date on and manner in which Starbucks determined that each such act or omission constituted a breach of the Supply Agreement; and
    d. the date on which Starbucks first considered notifying Kraft that such act or omission constituted a material breach of the Supply Agreement.
6. All documents and other materials relating to any actions taken by or on behalf of Starbucks in anticipation of and/or in preparation for termination of the Supply Agreement and/or any other Coffee Agreement including, without limitation:
    a. any transition planning or actions; and
    b. any negotiations and/or contracts with third parties that will or may be involved in the marketing, sale or distribution of the Licensed Products in the Licensed Channels after termination of the Supply Agreement.
7. All documents and other materials relating to any public relations strategy, analysis or planning concerning termination of any of the Coffee Agreements, including, without limitation, drafts of press releases or other communications to investors or other members of the public.
8. All internal and external communications relating to the foregoing.