# EXHIBIT 17

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel. 215.963.5000
Fax: 215.963.5001
www.morganlewis.com



# Morgan Lewis
COUNSELORS AT LAW

**William P. Quinn, Jr.**
215.963.5775
wquinn@morganlewis.com

**VIA EMAIL**

November 19, 2010

Aaron M. Panner, Esquire
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, DC 20036-3209

Re:  *Supply and License Agreement dated March 29, 2004 ("Supply Agreement")*

Dear Mr. Panner:

We write in response to your November 16, 2010 letter advising that Starbucks will not comply with Kraft's attempt to convene a meeting of the Oversight Committee for the purpose of addressing the dispute over Starbucks' purported termination of the Supply Agreement. As you surely recognize, Starbucks' refusal ignores the dispute resolution mechanism established by Paragraph 15(A) of the Supply Agreement. It also reveals a great deal about the *bona fides* of Starbucks' contention that it has valid grounds for termination.

As we previously reported, having thoroughly investigated Starbucks' breach allegations, we have determined that they are in all respects unfounded. Starbucks' purported notice of termination was therefore an empty act that had no legal effect on the parties' respective rights and obligations. Consequently, Kraft will continue performing under the Supply Agreement and will require Starbucks to do the same.

Despite determining that Starbucks' purported termination is legally invalid, Kraft, as required by Paragraph 15(A), sought to convene an Oversight Committee meeting to provide a forum for good faith consideration of Starbucks' allegations that Kraft materially breached the Supply Agreement. Starbucks' rejection of this opportunity to present its case for termination -- thereby shielding its breach allegations from scrutiny -- is compelling evidence that they are groundless. It also reinforces Kraft's belief that Starbucks accused Kraft of breach solely because it needed a pretext for attempting to terminate Kraft's rights under the Supply Agreement without honoring Starbucks' contractual commitment to compensate Kraft for the loss of those rights.

The rationale for you offer for Starbucks' refusal to comply with the contractual dispute resolution process is, at best, unsound. The fact that Starbucks has "exercised its [purported] right to terminate the Supply Agreement" does not, as you contend, mean that the dispute over

termination "is now settled under the terms of the Supply Agreement." It is not enough for Starbucks to *say* there has been a material breach. In order to terminate the Supply Agreement pursuant to Paragraph 5(B)(ii), there must in fact *have been* a material breach.

Equally meritless is your contention that, because Kraft did not request an Oversight Committee meeting within 30 days of your October 5, 2010 letter, Starbucks is now free to disregard the contractual requirement that the parties, acting through their representatives on the Oversight Committee, engage in a good faith attempt to address the dispute over termination. Nothing in Paragraph 15 supports the notion that the Oversight Committee must complete its consideration of a dispute within 30 days, failing which it is divested of its role in the dispute resolution process. The 30-day period to which you refer is relevant only to determining the date on which the parties may submit the dispute to arbitration.

We also note that Starbucks' objection to having the Oversight Committee consider the validity of Starbucks' purported termination cannot be reconciled with your assertion that the Oversight Committee is *"required"* to meet to address Kraft's failure "to cooperate with planning for the orderly transition" of the business. Kraft has no duty to participate in transition planning in the absence of a valid termination. It follows that, if the Oversight Committee were to take up Starbucks' complaint that Kraft is refusing to facilitate Starbucks' attempt to take over the CPG business, the Committee's inquiry would, of necessity, focus on the question of whether Starbucks has valid grounds for termination in the first place. This is precisely the question that Kraft has sought to put before the Oversight Committee.

For that reason, Kraft agrees to Starbucks' request for a meeting of the Oversight Committee to address Starbucks' grievance concerning transition planning provided that Starbucks first provides the Oversight Committee members with the foundation needed to fairly address the merits of Starbucks' asserted right to terminate, including the information requested in Deanie Elsner's November 15, 2010 letter to Jeff Hansberry. Please confirm that Messrs. Hansberry and Alstead will be available for the meeting as suggested and that the requested information will be provided at least 24 hours beforehand.

Very truly yours,

William P. Quinn, Jr.