# EXHIBIT 19

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**William P. Quinn, Jr.**
215.963.5775
wquinn@morganlewis.com

November 29, 2010

**VIA FACSIMILE**

Starbucks Corporation
2401 Utah Avenue
Seattle, Washington 98134
Attn.: Howard Schultz, Chairman, President and Chief Executive Officer
       Jeff Hansberry, President, CPG & Foodservices

Aaron M. Panner, Esquire
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036-3209

Re: *Supply and License Agreement dated March 29, 2004 ("Agreement")*

Dear Sirs:

On behalf of Kraft, we hereby demand that the dispute concerning Starbucks' attempt to terminate the above-referenced Agreement be submitted to binding arbitration in accordance with Paragraph 15(A) thereof. Consistent with Paragraph 15(A), Kraft has submitted the enclosed Demand for Arbitration to JAMS.

Very truly yours,

*[signature]*

William P. Quinn, Jr.

Enclosure

cc: Paula Boggs, Executive Vice President, General Counsel and Secretary
    Starbucks Corporation
    2401 Utah Avenue
    Seattle, Washington 98134



THE RESOLUTION EXPERTS®

# Demand for Arbitration Before JAMS

## Instructions for Submittal of Arbitration to JAMS

**Demand for Arbitration Based on Pre-Dispute Provision**

If you wish to proceed with an arbitration by executing and serving a Demand for Arbitration on the appropriate party, please submit the following items to JAMS:

A. Two (2) copies of the **Demand for Arbitration**

B. **Proof of service** of the Demand on the appropriate party
E.g., copy of certified mail receipt signed by recipient or sworn statement of service by a non-party over 18 years of age.

C. **Two (2) copies of the entire contract containing the arbitration clause**

D. **Initial non-refundable $400 Case Management Fee (CMF) per party**
Each party may submit its own CMF, or to expedite the commencement of the proceedings one party may elect to submit both or all CMFs. In lengthier, more complex cases additional CMF may be billed. For cases involving consumers, see JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses.

### OR

**Arbitration Based on Post-Dispute Fully Executed Arbitration Agreement, Oral Stipulation or Court Order Compelling Arbitration**

Whether or not a certain arbitrator has been designated, if the parties have agreed to arbitrate at JAMS or the court has ordered that the parties arbitrate at JAMS, kindly forward the following items:

A. Two (2) copies of **Executed Arbitration Agreement OR Court Order appointing arbitrator/JAMS**
Please contact JAMS to obtain the appropriate form (e.g., Arbitration Agreement)

B. Two (2) copies of the **entire contract, if any, containing an applicable arbitration clause**

C. **Initial non-refundable $400 Case Management Fee (CMF) per party**
Each party may submit its own CMF, or to expedite the commencement of the proceedings one party may elect to submit both or all CMFs. In lengthier, more complex cases additional CMF may be billed. For cases involving consumers, see JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses.

**Please submit to your local JAMS Resolution Center.**

Once the above items are received, JAMS will contact all parties to commence the arbitration process, including the appointment of an arbitrator and scheduling of a hearing date.



THE RESOLUTION EXPERTS®

# Demand for Arbitration Before JAMS

TO RESPONDENT: Starbucks Corporation
(Name of the Party on whom Demand for Arbitration is made)

(Address) 2401 Utah Avenue South

(City) Seattle   (State) WA   (Zip) 98134
(Telephone) (206) 447-1575   (Fax)   (E-Mail)

Representative/Attorney (if known): Aaron M. Panner, Esquire
(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)

(Address) Kellog, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., 1615 M. Street, N.W., Suite 400

(City) Washington   (State) DC   (Zip) 20036-3209
(Telephone) 202-326-7900   (Fax) 202-326-7999   (E-Mail) apanner@khhte.com

FROM CLAIMANT (Name): Kraft Foods, Inc.

(Address) Three Lakes Drive

(City) Northfield   (State) IL   (Zip) 60093
(Telephone) 847-646-2000   (Fax)   (E-Mail)

Representative/Attorney of Claimant (if known): William P. Quinn, Esquire, Kathleen Waters, Esquire
(Name of the Representative/Attorney for the Party Demanding Arbitration)

(Address) Morgan, Lewis & Bockius, 1701 Market Street

(City) Philadelphia   (State) PA   (Zip) 19103
(Telephone) 215-963-5000   (Fax) 215-963-5001   (E-Mail) wquinn@morganlewis.com

## NATURE OF DISPUTE

Claimant hereby demands that you submit the following dispute to final and binding arbitration (a more detailed statement of the claim(s) may be attached):



THE RESOLUTION EXPERTS®

# Demand for Arbitration Before JAMS

Kraft and Starbucks are parties to a March 29, 2004 Supply and License Agreement, pursuant to which Kraft owns the exclusive right to sell certain Starbucks products in grocery stores and other retail channels (the "Agreement"). Starbucks has purported to terminate the Agreement effective March 1, 2011 on the ground that Kraft materially breached the Agreement. Starbucks' allegations of material breach are baseless, however. The relief Kraft seeks in this arbitration includes, but is not limited to, a declaration that Starbucks' purported termination of the Agreement is invalid and has no legal effect on Kraft's rights thereunder.

## ARBITRATION AGREEMENT

Kraft submits the parties' dispute for resolution in accordance with Paragraph 15 of the Agreement, which provides for binding arbitration to be "conducted within the City of Chicago at JAMS or its successor, pursuant to its Comprehensive Arbitration Rules and Procedures, except as modified by the Agreement of the parties. The arbitration shall be conducted by a single arbitrator selected by mutual agreement of the parties within twenty (20) days after the date of submission of the dispute to binding arbitration, or in the absence of such agreement, such selection to be made by JAMS." Two copies of the Agreement are submitted herewith.

## CLAIM & RELIEF SOUGHT BY CLAIMANT

See above under "Nature of Dispute." Consistent with Rule 9 of the JAMS Comprehensive Arbitration Rules and Procedures, Kraft shall provide Starbucks with its Notice of Claim within 14 calendar days of the date on which arbitration is commenced.

## RESPONSE

Respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. Send the original response and counter-claim to the claimant at the address stated above with two (2) copies to JAMS.



THE RESOLUTION EXPERTS*

# Demand for Arbitration Before JAMS

## REQUEST FOR HEARING

JAMS is requested to set this matter for hearing at: __Chicago, IL__
(Preferred Hearing Location)

## ELECTION FOR EXPEDITED PROCEDURES (COMPREHENSIVE RULE 16.1)

By checking this box ☐ Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than 7 days from the date this Demand is served whether it agrees to the Expedited Procedure.

Signed (Claimant): _/s/_  Date: _11.29.10_
(may be signed by an attorney)

Print Name: __Kathleen Waters__

Please include a check payable to JAMS for the required initial, non-refundable $400 per party deposit to be applied toward your Case Management Fee and submit to your local JAMS Resolution Center.

**COMPLETION OF THIS SECTION IS REQUIRED FOR CLAIMS INITIATED IN CALIFORNIA**

A. Please check here if this ☐ IS or ☐ IS NOT a CONSUMER ARBITRATION as defined by California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e):

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

1) The contract is with a consumer party, as defined in these standards;
2) The contract was drafted by or on behalf of the non-consumer party; and
3) The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:



# Demand for Arbitration Before JAMS

1) An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;

2) An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;

3) An individual with a medical malpractice claim that is subject to the arbitration agreement; or

4) An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.

B. If this is an EMPLOYMENT matter, Claimant must complete the following information:

Effective January 1, 2003, private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

Annual Salary:

☐ Less than $100,000       ☐ More than $250,000

☐ $100,000 to $250,000     ☐ Decline to State

C. In California, consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees. In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information.



THE RESOLUTION EXPERTS*

# Demand for Arbitration Before JAMS

## PROOF OF SERVICE

I am a resident of the Commonwealth of Pennsylvania, over the age of eighteen years, and not a party to the within-entitled action; my business address is 1701 Market Street, Philadelphia, PA, 19103-2921.

On November 29, 2010, I served the within document(s):

**DEMAND FOR ARBITRATION BEFORE JAMS**

[X]  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Philadelphia, PA addressed as set forth below, with a copy sent by electronic mail.

Aaron M. Panner, Esquire
Kellog, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M. Street, N.W., Suite 400
Washington, D.C. 20036-3209
apanner@khhte.com

I am familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

Executed on November 29, 2010, at Philadelphia, PA.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Randy Undercofler

## SUPPLY AND LICENSE AGREEMENT

THIS SUPPLY AND LICENSE AGREEMENT ("*Agreement*") is entered into as of March 29, 2004, by and between STARBUCKS CORPORATION, a Washington corporation ("*Supplier*"), and KRAFT FOODS GLOBAL, INC., a Delaware corporation ("*Distributor*"), and shall become effective on the Effective Date (as defined herein).

WHEREAS, Supplier is engaged in the manufacture, sale and distribution of various types of coffee, including Super Premium Coffee (as defined herein);

WHEREAS, Distributor is engaged in the manufacture, sale and distribution of a variety of food products in the Licensed Channels (as defined herein);

WHEREAS, Supplier and Kraft Foods, Inc. (now known as Kraft Foods Global, Inc.) are parties to a Trademark License Agreement dated September 25, 1998 (the "Original License Agreement"), under which Supplier has granted to Distributor the rights to use certain trademarks of Supplier on the terms and conditions set forth therein;

WHEREAS, pursuant to the Original License Agreement, Supplier and Kraft Foods, Inc. (now known as Kraft Foods Global, Inc.) entered into an Amended and Restated Purchase, Supply and Royalty Agreement dated November 30, 1998 (the "*Original Supply Agreement*") upon the satisfaction of certain conditions with respect to filings made by the parties with the Federal Trade Commission and the Antitrust Division of the United States Department of Justice under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "*HSR Act*"); and

WHEREAS, Supplier and Distributor have continued to review the terms of the Original Supply Agreement and the Original License Agreement and now desire to enter into this Agreement that reflects certain changes in the distribution arrangement between the parties as set forth herein, and that is intended to supersede the Original Supply Agreement and the Original License Agreement.

NOW, THEREFORE, for the mutual consideration set forth herein, the parties hereto agree as follows:

1. **Definitions**. For purposes of this Agreement:

"*A&P*" or "*Advertising and Promotion*" shall be defined as all sums expensed pursuant to U.S. generally accepted accounting principles by Distributor to advertise and promote Licensed Products in the Licensed Channels in the Territory, including but not limited to all expenses associated with production and distribution of television, radio, print (including free standing inserts), direct mail, on-line (e.g., internet), point-of-sale and other forms of advertising; trade spending; consumer promotions; public relations; and product sampling and demonstrations, but excluding any of Distributor's internal overhead costs.

"*Affiliate*" shall be defined as, with respect to a party, any person or entity which, directly or indirectly, is in control of, is controlled by, or is under common control with, such party. For the purposes of this definition, "control" of a person or entity means the power,

Section 13.C shall limit a party's indemnification obligations with respect to third party claims under Sections 13.A or 13.B above.

14. **Binding Agreement; Assignability.**

A. <u>Binding Agreement.</u> Unless assigned or transferred in violation hereof, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

B. <u>Assignment.</u> Neither party may assign this Agreement or any of its rights hereunder without the prior written approval of the other party; *provided, however,* that either party may assign this Agreement, and its rights and obligations hereunder (in whole or in part), without the prior written approval of the other party, to a subsidiary or other corporate Affiliate, other than the parent, of such party. In the event of any assignment of this Agreement, the assignor shall, following such assignment, remain liable for all of its obligations under this Agreement.

15. **Dispute Resolution.**

A. The parties hereto will attempt to settle any claim or controversy arising out of or relating to this Agreement through consultation and negotiation in good faith and a spirit of mutual cooperation, by submitting such claim or controversy to the Oversight Committee. However, at any time following the first to occur of (i) the first meeting of the Oversight Committee concerning such claim or controversy, or (ii) expiration of the thirty (30)-day period following a party's written request to the other party to submit such claim or controversy to the Oversight Committee if the Oversight Committee has not met to consider such claim or controversy within such thirty (30)-day period, either party may by written notice to the other demand that the dispute be submitted to arbitration. Such binding arbitration shall be conducted within the City of Chicago at JAMS or its successor, pursuant to its Comprehensive Arbitration Rules and Procedures, except as modified by the Agreement of the parties. The arbitration shall be conducted by a single arbitrator selected by mutual agreement of the parties within twenty (20) days after the date of submission of the dispute to binding arbitration, or in the absence of such agreement, such selection to be made by JAMS. The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1-16 (as may be amended), and judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. The arbitrator is empowered to award attorney's fees but is not empowered to award damages in excess of compensatory damages, and each party hereby irrevocably waives any right to recover such damages with respect to any dispute arising out of or relating to this Agreement. If JAMS or its successor is no longer operative, then the Center for Public Resources (CPR) or its successor and its rules and procedures shall be substituted for JAMS for all purposes of this Section 15.

B. Nothing in this Agreement will prevent either party from resorting to judicial proceedings in the United States District Court for the Southern District of New York for the limited purpose of seeking a preliminary injunction or to avoid the barring of the claim under the applicable statute of limitations. In addition, resort by either party to negotiation, mediation or arbitration pursuant to this Agreement shall not be construed under the doctrine of laches,

waiver or estoppel to affect adversely the rights of either party to pursue any such judicial relief; *provided, however*, that irrespective of the filing of any such request for judicial relief the party shall continue to participate in the dispute resolution proceedings required by this paragraph. Any negotiation or mediation which takes place pursuant to this Agreement shall be confidential and shall be treated as a compromise and settlement negotiation for purposes of the Federal Rules of Evidence and State rules of evidence.

16. **Supplier's Title and Protection of Supplier's Rights.**

   A.   Supplier's Title. Supplier represents and warrants that it has the right, pursuant to (i) a Trademark Protection and License Agreement, dated September 28, 1997, with Starbucks U.S. Brands L.L.C. (the successor by merger to Starbucks U.S. Brands Corporation), (ii) a Trademark License Agreement dated as of October 1, 2003, as amended, with Seattle's Best Coffee LLC, and (iii) a Trademark License Agreement dated as of October 1, 2003, as amended, with Torrefazione Italia LLC, to use and sublicense the Licensed Trademarks in the manner contemplated by this Agreement and that it has and will continue to have throughout the term of this Agreement all requisite authority to enter into and perform its obligations under this Agreement, and knows of no allegations that its use or licensing of the Licensed Trademarks would infringe or violate the rights of any third party. Distributor acknowledges that notwithstanding the foregoing representations and warranties, certain brokers and distributors have contractual rights to sell and/or distribute certain of the Licensed Products, as contemplated in the SBC/TI/Military Transition Plan. Distributor shall not at any time during the term of this Agreement contest or aid others in contesting the validity of the Licensed Trademarks. Supplier represents and warrants that Starbucks U.S. Brands L.L.C. is obligated under the Trademark Protection and License Agreement to use reasonable efforts in good faith to maintain the registrations for the Licensed Trademarks in the United States.

   B.   Goodwill; Control of Licensed Trademarks. Distributor acknowledges the substantial value of the goodwill associated with the Licensed Trademarks and agrees to use the Licensed Trademarks in the form and manner prescribed by Supplier and as set forth in this Agreement. Distributor's use of the Licensed Trademarks and any goodwill generated from the use of the Licensed Trademarks by Distributor shall inure to the benefit of the owner of the Licensed Trademarks. Apart from this Agreement, Distributor shall hereafter neither acquire nor claim any right, title, or interest of any kind or nature whatsoever in or to the Licensed Trademarks or the goodwill associated therewith. Supplier has approval rights over all aspects of all uses by Distributor of the Licensed Trademarks, including, without limitation, in connection with packaging materials, labels, displays, promotional items, trade spending and advertising. In the event Supplier and Distributor are unable to agree on uses by Distributor of the Licensed Trademarks, Distributor may submit the matter for resolution to Supplier's Senior Vice President of Marketing or to Supplier's President.

   C.   Legend. Distributor shall display the Licensed Trademarks only in such form and manner as is specifically approved by Supplier pursuant to the provisions of this Agreement. Distributor shall not use the Licensed Trademarks in a manner which may reasonably give the impression that the Licensed Trademarks are owned by Distributor. Where practical and appropriate or reasonably required by Supplier, all materials bearing the Licensed Trademarks shall include a notice that the Licensed Trademarks are owned by Starbucks U.S.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first above written.

STARBUCKS CORPORATION

By: _____
Name: Michael Casey
Its: Exec. Vice President

KRAFT FOODS GLOBAL, INC.

By: _____
Name: Elizabeth A. Smith
Its: Group Vice President & President, U.S. Beverages and Grocery Sectors