IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> STARBUCKS CORPORATION, <br><br> Defendant. | Civil No. 10-9085 (CS) <br> ECF Case |

**ANSWER OF DEFENDANT STARBUCKS CORPORATION**

Defendant Starbucks Corporation ("Starbucks"), by and through its undersigned counsel, hereby answers the Complaint for Preliminary Injunctive Relief filed by Plaintiff Kraft Foods Global, Inc. ("Kraft"). All allegations not expressly admitted are hereby denied.[1]

1. Starbucks admits that Kraft's lawsuit arises primarily out of a 2004 contract between Starbucks and Kraft ("the R&G Agreement"). Starbucks avers that the R&G Agreement speaks for itself, and denies any allegations of this paragraph inconsistent with the terms of the R&G Agreement.

2. Starbucks denies that Kraft has performed "exceptionally well" under the R&G Agreement. Starbucks admits that Kraft's sales of Starbucks consumer packaged goods ("CPG") products generate approximately $500 million in annual revenue, but denies the remaining allegations in Paragraph 2.

---

[1] Kraft's complaint includes several section headings. As these headings are not part of any paragraph, no response to them is required. To the extent that a response is required, Starbucks denies the allegations contained in these headings.

3.     Starbucks denies that Kraft's distribution of Starbucks' CPG products is performing extremely well.  Starbucks lacks information sufficient to admit or deny the remaining allegations of this paragraph, and therefore denies them.

4.     Starbucks denies that it has repeatedly praised Kraft for the quality and effectiveness of its performance under the R&G Agreement.  Starbucks incorporates by reference its response to paragraphs 41 and 43 *infra*.  To the extent the allegations of this paragraph differ from the allegations in paragraphs 41 and 43 of the complaint, Starbucks denies them.  Further answering, Starbucks avers that it has repeatedly informed Kraft that Kraft was failing to perform adequately under the R&G Agreement, and Kraft has acknowledged that its performance has been deficient.  Anthony Vernon, the President of Kraft Foods North America, apologized to Starbucks for Kraft's poor performance.  On or about January 17, 2010, Mr. Vernon sent an e-mail to Howard Schultz, CEO of Starbucks, in which Mr. Vernon admitted that the relationship between Kraft and Starbucks was "very broken," because Kraft had "neglected [the] relationship badly in North America."  Mr. Vernon stated that Kraft wished "to fix the sins of the past."  Despite these assurances, Kraft has continued to fail to live up to its obligations under the R&G Agreement.

5.     Admitted that Starbucks decided to take back the Starbucks CPG business.  Starbucks denies the remaining allegations of this paragraph.

6.     Starbucks avers that the R&G Agreement speaks for itself, and denies any allegations of this paragraph inconsistent with the terms of the R&G Agreement.  The remaining allegations in Paragraph 6 are denied.

7.     Starbucks admits that the parties have discussed terminating the R&G Agreement over several months in early 2010.  Further answering, Starbucks avers that, in response to the

exchange of e-mails referred to in Paragraph 4 above, the parties attempted during the first half of 2010 to negotiate arrangements for Starbucks to take back distribution of its packaged coffee business.  Those discussions led to an agreement in principle in which the parties agreed to structure a $500 million payment from Starbucks to take back the roast and ground business and a commitment from Starbucks to remain on the Tassimo platform.   After committing to this agreement in principle, Kraft suddenly changed course in late April, demanding an additional $200 million for a total payment from Starbucks of $700 million.  On May 4, 2010, Starbucks expressed its disappointment in Kraft's "dramatic departure" from the original agreement and informed Kraft that it expected Kraft to "deliver better results under current arrangements."  Kraft's continued poor performance led to further discussions between the parties in August 2010.  Those discussions were in the nature of privileged settlement discussions, such that their terms are inadmissible under Federal Rule of Evidence 408 and, on that basis, Starbucks neither admits nor denies Kraft's characterization of those discussions.  Starbucks denies the remaining allegations in Paragraph 7.

8. Starbucks admits that it alleged that Kraft materially breached the R&G Agreement.  Starbucks avers that the R&G Agreement speaks for itself, and denies any allegations of this paragraph inconsistent with the terms of the R&G Agreement.  Starbucks denies the remaining allegations of this paragraph.

9. Denied.

10. Denied.  Further answering, Starbucks avers that it informed Kraft of its material breaches of the R&G Agreement and gave Kraft the opportunity to cure those breaches.  Starbucks further informed Kraft on October 5, 2010, that, if it did not cure the breaches identified within 30 days, it would terminate the R&G Agreement effective March 1, 2011.

Starbucks simultaneously notified the Oversight Committee of Kraft's breaches.  Because Kraft made no effort to cure the breaches or to discuss them in the Oversight Committee, Starbucks terminated the R&G Agreement on November 5, 2010.

11. The allegations of this paragraph characterize this action and no response to them is required; to the extent an answer is required, Starbucks denies the allegations of this paragraph.  Further answering, Starbucks denies that Kraft is entitled to a preliminary injunction.

## THE PARTIES

12. Admitted on information and belief.

13. Admitted.

## JURISDICTION AND VENUE

14. Starbucks admits that this Court has subject matter jurisdiction over this case.

15. Starbucks admits that venue is proper in this Court and that the Court has personal jurisdiction over the parties.

## FACTUAL BACKGROUND

16. Starbucks lacks sufficient information to admit or deny the allegations in this paragraph.

17. Starbucks lacks sufficient information to admit or deny the allegations in this paragraph.

18. Starbucks lacks sufficient information to admit or deny the allegations in this paragraph.

19. Admitted.

20. Admitted.

21. Starbucks admits that, in the 1990's, it sought to enter the CPG market and that it continues to strive to maintain its reputation as the preeminent producer of premium and super premium coffee. The remaining allegations in Paragraph 21 are denied.

22. Starbucks admits that it entered into a contractual relationship with Kraft in order to facilitate its expansion into the CPG market. The remaining allegations in Paragraph 22 are denied.

23. Starbucks admits that it entered into an agreement with Kraft in September 1998, which speaks for itself. The remaining allegations in Paragraph 23 are denied.

24. Starbucks admits that it coordinated with Kraft to sell its premium and super premium coffee in the CPG market. Starbucks admits that the quoted language in the paragraph was attributed to the quoted individuals and avers that the quoted language cannot be understood out of context. The remaining allegations in Paragraph 24 are denied.

25. Starbucks admits that gross annual revenues from its CPG business increased in the first five years. Starbucks denies the remaining allegations in Paragraph 25.

26. Denied.

27. Denied.

28. Denied.

29. Starbucks admits that the parties negotiated the R&G Agreement, which speaks for itself. The remaining allegations in Paragraph 29 are denied.

30. Admitted.

31. Starbucks admits that the R&G Agreement contains the quoted language, avers that the R&G Agreement speaks for itself, and denies any allegations of this paragraph

inconsistent with the terms of the R&G Agreement.  Starbucks denies the remaining allegations of this paragraph.

32.     Starbucks admits that the R&G Agreement contains the quoted language, avers that the R&G Agreement speaks for itself, and denies any allegations of this paragraph inconsistent with the terms of the R&G Agreement.  Starbucks denies the remaining allegations of this paragraph.

33.     Starbucks avers that the R&G Agreement speaks for itself and denies any allegations of this paragraph inconsistent with the terms of the R&G Agreement.  Starbucks denies the remaining allegations of this paragraph.

34.     Starbucks lacks sufficient information to admit or deny the allegations in this paragraph.

35.     Starbucks denies the allegations of this paragraph as stated.  Further answering, Starbucks avers that its sales of packaged coffee in the channels covered by the R&G Agreement have grown in the last 12 years.

36.     Starbucks admits, on information and belief, that some consumers reduced discretionary spending as a result of the 2008 recession.  Starbucks further presumes that growth in Starbucks' retail network and in the channels covered by the R&G Agreement was negatively affected by the recession of 2008-09.  Starbucks admits that Howard Schultz was quoted as making the statement quoted in this paragraph.  Starbucks denies the remaining allegations of this paragraph.

37.     The allegation concerning "U.S. comparable retail cafe sales" is vague and ambiguous, and, for that reason, Starbucks neither admits nor denies the allegations of this paragraph as stated.  Further answering, Starbucks avers that, for the relevant time period,

Starbucks included quarterly information relating to its U.S. comparable retail café sales in its 8-K filings, and denies any allegations of this paragraph inconsistent with those filings.

38.     Starbucks denies that the entry of other companies into the CPG market constituted "unprecedented competitive pressure."

39.     Denied.

40.     Starbucks lacks information sufficient to admit or deny the allegations of this paragraph concerning sales figures, and therefore denies them.  Starbucks denies the remaining allegations of this paragraph.  Further answering, Starbucks avers that improvement in sales revenue of Starbucks products in the channels covered by the R&G Agreement in 2010 was due to Starbucks-led innovations.

41.     Starbucks denies that it has "frequently praised Kraft for the quality and effectiveness of its performance in managing the Starbucks CPG business."  Further answering, Starbucks avers that it has repeatedly expressed its dissatisfaction to Kraft concerning the nature of the relationship between the parties.  Starbucks admits that the quoted language in the paragraph was attributed to the quoted individuals and avers that the quoted language cannot be understood out of context.  Starbucks denies the remaining allegations of this paragraph.

42.     Starbucks denies that its private comments to Kraft have been "effusive."  Starbucks admits that the quoted language appeared in a communication from the individual named in paragraph 42; Starbucks avers that the communication cannot be understood out of context and denies the remaining allegations of this paragraph.  Further answering, Starbucks avers that it has repeatedly expressed its dissatisfaction to Kraft regarding Kraft's performance under the R&G Agreement.  For example, in early 2010, Starbucks CEO Howard Schultz informed Kraft that Starbucks "cannot accept the continued share erosion and lack of progress

we are experiencing down the grocery aisle." Mr. Schultz further stated, "Our store business around the world is showing dramatic improvement, yet our packaged coffee CPG business with Kraft is either in retreat (in the UK/Europe) or continuing to deteriorate (in North America). And, candidly, we have heard nothing so far to suggest that we have any reason to expect a reversal of these trends anytime soon."

43. Starbucks admits that the quoted language appeared in a communication from the individual named in paragraph 43; Starbucks avers that the communication cannot be understood out of context and denies the remaining allegations of this paragraph.

44. Starbucks admits that its CPG business is valuable. Starbucks denies the remaining allegations of this paragraph.

45. Denied.

46. Starbucks admits that the quoted language in the paragraph was attributed to the individuals named in this paragraph and avers that the quoted language cannot be understood out of context.

47. Starbucks admits that the quoted language in the paragraph was attributed to the quoted individuals and avers that the quoted language cannot be understood out of context.

48. Starbucks admits that the quoted language in the paragraph was attributed to a Starbucks employee and avers that the quoted language cannot be understood out of context. Starbucks denies the remaining allegations of this paragraph.

49. Starbucks admits that it introduced VIA® Ready Brew in 2009 and that it regards VIA® as an important component of its CPG sales. Starbucks admits that the quoted language in the paragraph was attributed to the quoted individual and avers that the quoted language

cannot be understood out of context.  Starbucks denies the remaining allegations in Paragraph 49.

50. Admitted.

51. Starbucks avers that the R&G Agreement speaks for itself and denies any allegations of this paragraph inconsistent with the terms of the R&G Agreement.  Starbucks denies the remaining allegations in Paragraph 51.

52. Denied.

53. Starbucks admits that the parties have discussed terminating the R&G Agreement over several months in 2010, including during a meeting in Chicago with Starbucks and Kraft executives on or about August 9, 2010.  Starbucks denies the remaining allegations in Paragraph 53.

54. Starbucks avers that discussions between the parties on or about August 9, 2010, were in the nature of privileged settlement discussions, such that their terms are inadmissible under Federal Rule of Evidence 408 and, on that basis, neither admits nor denies Kraft's characterization of those discussions. Starbucks denies the remaining allegations in Paragraph 54.

55. Denied.

56. Denied.

57. Denied.

58. Starbucks admits that it sent a letter on October 5, 2010, detailing Kraft's material breaches and avers that the letter speaks for itself.  Starbucks denies the remaining allegations of this paragraph.

59. Starbucks admits that the letter was sent within two months of the meeting on or about August 9, 2010, and that Kraft has materially breached the R&G Agreement for an extended period of time.  Starbucks denies the remaining allegations in Paragraph 59.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. Starbucks admits that the R&G Agreement contains the quoted language, avers that the R&G Agreement speaks for itself, and denies any allegations of this paragraph inconsistent with the terms of the R&G Agreement.  Starbucks denies the remaining allegations of this paragraph.

68. Starbucks admits that the R&G Agreement contains the quoted language, avers that the R&G Agreement speaks for itself, and denies any allegations of this paragraph inconsistent with the terms of the R&G Agreement.  Starbucks denies the remaining allegations of this paragraph.

69. Denied.

70. Starbucks admits that it received a letter of November 4, 2010, from counsel for Kraft, which speaks for itself.  Starbucks denies the remaining allegations of the paragraph.  Further answering, Starbucks denies that the letter contains a detailed refutation of any of Starbucks claims.

71. Denied.

72. Denied. Further answering, Starbucks avers that it provided notice to the Oversight Committee in its letter of October 5, 2010. Kraft did not respond to that letter until November 4, 2010, at which time it did not request any meeting of the Oversight Committee but instead indicated that it intended to proceed to arbitrate. Based on Kraft's inaction, Starbucks terminated the R&G Agreement on November 5, 2010. Only after that final termination did Kraft request a meeting of the Oversight Committee.

73. Starbucks admits that Kraft has initiated arbitration proceedings. Starbucks denies the remaining allegations of this paragraph.

74. Denied.

75. Starbucks admits that it announced its intention to terminate its relationship with Kraft on November 4, 2010. Starbucks denies the remaining allegations of this paragraph.

76. Starbucks admits that it issued a press release discussing the termination of the R&G Agreement on November 29, 2010, and avers that the press release speaks for itself. Starbucks denies the remaining allegations of this paragraph.

77. Denied.

78. Starbucks denies that it breached the R&G Agreement or disparaged Kraft's performance under the agreement in any way, including through its efforts to prepare for the transition of its business following the termination of the R&G Agreement.

79. Starbucks denies that it breached the R&G Agreement in any way, including through its efforts to prepare for the transition of its business following the termination of the R&G Agreement. Starbucks admits that it has contacted certain CPG customers in connection with these transition efforts. Starbucks denies the remaining allegations of this paragraph.

Further answering, Starbucks avers that Kraft, in violation of the R&G Agreement, has refused to cooperate in preparing for an orderly transition of the business following termination.

80.     Starbucks admits that, following its termination of the R&G Agreement, Starbucks informed certain customers that the R&G Agreement would terminate, effective March 1, 2011.  Starbucks admits that Kraft communicated with Starbucks concerning these communications, and avers that those communications speak for themselves.  Starbucks denies the remaining allegations of this paragraph.

81.     Starbucks admits that it notified Kraft of Starbucks' plans to contact customers given Kraft's failure to comply with Paragraph 6(C) of the R&G Agreement, which requires both parties to "act in good faith to make an orderly transition for the sale of the Licensed Products following termination of this Agreement."  Starbucks denies the remaining allegations of this paragraph.

82.     Admitted.

83.     Denied.

84.     Denied.

85.     Starbucks admits that single-serve coffee makers produce coffee by forcing hot water through ground coffee that has been packaged in specialized single serving containers.  Starbucks lacks sufficient information to answer the remaining allegations in Paragraph 85.

86.     Starbucks lacks sufficient information to answer the allegations in Paragraph 86.

87.     Starbucks lacks sufficient information to answer the allegations in Paragraph 87.

88.     Admitted on information and belief.

89.     Starbucks admits that Kraft and Starbucks entered into the Tassimo Supply and License Agreement in August 2006.  Further answering, Starbucks avers that the Tassimo

Supply and License Agreement speaks for itself and denies any allegations of this paragraph inconsistent with the terms of the Tassimo Supply and License Agreement.

90. Starbucks admits that Kraft and Starbucks entered into the Starbucks Tassimo Supply and License Agreement in July 2007.  Further answering, Starbucks avers that the Starbucks Tassimo Supply and License Agreement speaks for itself and denies any allegations of this paragraph inconsistent with the terms of the Starbucks Tassimo Supply and License Agreement.

91. Starbucks avers that the Tassimo Agreements speak for themselves and denies any allegations of this paragraph inconsistent with the terms of the Tassimo Agreements.

92. Starbucks lacks sufficient information to answer the allegations in Paragraph 92.

93. Starbucks lacks sufficient information to answer the allegations in Paragraph 93.

94. Starbucks lacks sufficient information to answer the allegations in Paragraph 94.

95. Starbucks admits that Kraft has promoted Tassimo in the United States as the only on-demand system that offers Starbucks products.  Starbucks lacks sufficient information to answer the remaining allegations in this paragraph.

96. Admitted.

97. Denied.

98. Denied.

99. Starbucks admits that certain statements of Howard Schultz were reported on November 12, 2010, but denies the statement quoted in the complaint was made.  Starbucks denies the remaining allegations of this paragraph.

100. Starbucks lacks sufficient information to answer the allegations in Paragraph 100.

101. Denied.

102. Denied.

103. Denied.

104. Starbucks admits that the quoted language was attributed to a Starbucks employee. Starbucks denies the remaining allegations of this paragraph.

105. Denied.

106. Denied.

107. Denied.

108. Starbucks avers that the R&G Agreement speaks for itself and denies any allegation of this paragraph inconsistent with the terms of the R&G Agreement. The remaining allegations of this paragraph are denied.

109. Denied.

110. Starbucks lacks sufficient information to answer the allegations regarding Kraft's customers. Starbucks denies the remaining allegations of this paragraph.

111. Starbucks lacks sufficient information to admit or deny the allegations of this paragraph concerning news reports, analysts, and commentators. The remaining allegations of the complaint are denied.

112. Denied.

113. Denied.

114. Denied.

115. Denied.

116. Starbucks lacks sufficient information to answer the allegations regarding Kraft's purported knowledge.

117. Denied.

118. Denied.

119. Admitted on information and belief.

120. Starbucks lacks sufficient information to answer the allegations in Paragraph 120.

121. Starbucks lacks sufficient information to answer the allegation in Paragraph 121.

122. Starbucks lacks sufficient information to answer the allegations in Paragraph 122.

## COUNT ONE

## INJUNCTIVE RELIEF

123. Starbucks incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

124. Starbucks avers that the R&G Agreement speaks for itself and denies any allegations of this paragraph inconsistent with the terms of the R&G Agreement.

125. Starbucks avers that the R&G Agreement speaks for itself and denies any allegations of this paragraph inconsistent with the terms of the R&G Agreement.

126. Paragraph 126 states a legal conclusion to which no response is required.

127. Denied.

128. Denied.

129. Denied.

130. Each allegation and sub-allegation in Paragraph 130 is denied.

131. Denied.

132. Denied.

133. Paragraph 133 states a legal conclusion to which no response is required. To the extent this paragraph asserts factual allegations, those allegations are denied.

134. Paragraph 134 asserts legal conclusions to which no response is required. To the extent this paragraph asserts factual allegations, those allegations are denied.

WHEREFORE, defendant Starbucks Corporation respectfully requests that this Court enter judgment in its favor and deny the request of plaintiff Kraft Foods Global, Inc., for a preliminary injunction, and award defendant such other relief as may be just and proper.

Respectfully submitted,

| | |
|---|---|
| | s/ Joseph S. Hall |
| Maria Barton | Joseph S. Hall (JH-2612) |
| Paul Serritella | Aaron M. Panner (*pro hac vice* motion pending) |
| LATHAM & WATKINS LLP | Wan J. Kim (*pro hac vice* motion pending) |
| 885 Third Avenue | KELLOGG, HUBER, HANSEN, TODD, |
| New York, NY 10022-4834 |    EVANS & FIGEL, P.L.L.C. |
| Tel. (212) 906-1200 | 1615 M Street, N.W. |
| Fax (212) 751-4864 | Suite 400 |
| | Washington, DC 20036 |
| | Tel. (202) 326-7900 |
| | Fax (202) 326-7999 |
| | jhall@khhte.com |
| | apanner@khhte.com |

Dated: December 27, 2010