IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| KRAFT FOODS GLOBAL, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>STARBUCKS CORPORATION,<br><br>  Defendant. | Civil No. 10-9085 (CS)<br>ECF Case |

## DECLARATION OF JEFF J. HANSBERRY

I, Jeff Hansberry, do declare under penalty of perjury:

1. I am the President of Global Consumer Products and Foodservice at Starbucks Corporation, a position I have held since I joined Starbucks in June 2010. My primary responsibility is to manage and grow the company's consumer products business around the world, including products such as Starbucks packaged coffee, ready-to-drink coffee, ice cream, Tazo® teas and drinks, and Starbucks VIA® Ready Brew.

2. Starbucks currently distributes VIA® directly, but its packaged coffee has been distributed for approximately 12 years by Kraft. Since 2004, the parties have been operating under a Supply and License Agreement known as the Roast and Ground or "R&G Agreement." Upon my arrival at Starbucks, I learned that Starbucks' Consumer Packaged Goods ("CPG") business has not been performing well. In fact, Starbucks' share in the premium coffee segment has decreased every year since the revised R&G Agreement was signed, falling from approximately 32.7% in 2004 to approximately 26.7% at the start of 2010.

3. On October 5, 2010, Starbucks sent Kraft notice of its intent to terminate the R&G Agreement based upon Kraft's material breaches of the Agreement. Starbucks requested that Kraft cure these breaches and provided notice of the dispute to the Oversight Committee established under the R&G Agreement. Kraft did not respond to Starbucks' letter until November 4, 2010. In its response, Kraft denied that the material breaches identified by Starbucks had occurred. Kraft did not offer to cure the breaches nor did it indicate that it had made any attempt to do so. Kraft also did not attempt to raise

Starbucks' claims of material breach to the Oversight Committee within the 30-day period provided for in the R&G Agreement. Accordingly, on November 5, 2010, Starbucks provided final notice that it would terminate the Agreement, effective March 1, 2011.

4. I understand that Kraft has requested a preliminary injunction that would prevent Starbucks from terminating the R&G Agreement on March 1, 2011. As set forth above, Starbucks first communicated its intent, on October 5, 2010, to terminate the R&G Agreement effective March 1, 2011, if Kraft failed to cure its material breaches of the R&G Agreement. On November 5, 2010, based on Kraft's inaction, Starbucks confirmed that the R&G Agreement would terminate on March 1, 2011. Starbucks selected an effective date that is nearly five months after notice was first provided in October 2010 to ensure that Starbucks could arrange for an orderly transition of the business. It takes time to contact customers and establish the infrastructure necessary to distribute millions of pounds of packaged coffee to thousands of stores throughout the country. Having begun this process, it would cause significant harm to Starbucks now to stop mid-stream.

5. I am familiar with the provision of the R&G Agreement that requires both parties to act in good faith to ensure an orderly transition in the event that the R&G Agreement is terminated. I have made repeated efforts to work with my counterparts at Kraft to plan for an orderly transition. However, Kraft has refused to engage in transition planning of any kind and has requested that Starbucks direct all communications regarding transition planning to Kraft's attorneys.

6. Kraft's refusal to engage in transition planning is causing significant harm to Starbucks. Retail customers typically make decisions concerning assortment (i.e., which stock-keeping units (SKUs) they will carry) and merchandising (i.e., which products they will display, feature in advertisements, and offer price reductions for) anywhere from three to six months in advance. Most retail customers are therefore currently putting together their assortment and merchandising plans for all of 2011, and that process will continue through the first part of 2011.

7. It has come to my attention that Kraft has been informing customers that, notwithstanding (accurate) news reports publicizing the impending termination of the R&G Agreement, Kraft will continue to distribute Starbucks coffee "until this situation is resolved."
(I have attached copies of two of Kraft's letters to this declaration as Exhibits A and B.) Kraft's misleading public statements have led to confusion and uncertainty among retail customers seeking to finalize their assortment and merchandising plans for 2011. Despite Starbucks' consistent message to Kraft that the R&G Agreement *will* terminate on March

2

1, 2011, Kraft has communicated to its customers that it expects its relationship with Starbucks to continue beyond that date.

8. At the same time, it has come to my attention (based on conversations with a key retail customer) that Kraft is telling customers it cannot commit to merchandising plans for 2011 because it has not yet finalized its supply plans with Starbucks. Several of Starbucks' customers have already expressed concern over the uncertainty and confusion Kraft is creating regarding who will supply Starbucks products to them in 2011. Starbucks has lost and will continue to lose key merchandising opportunities with customers for 2011 as a result of this uncertainty and confusion. Moreover, at least one retail customer has informed me that it is unwilling to speak with Starbucks altogether regarding its merchandising plans for 2011 given the uncertainty over who will distribute Starbucks products in the future.

9. After terminating the R&G Agreement, Starbucks announced that it intended to work with Acosta, Inc., to develop sales strategies for the CPG market after March 1, 2011. Kraft responded by threatening Acosta with litigation if it cooperated with Starbucks. I have attached a copy of a letter sent from Kraft to Acosta as Exhibit C. Kraft's letter claims that any attempt by Acosta to cooperate with Starbucks "would constitute tortious interference with Kraft's contractual relationship with Starbucks as well as Kraft's business relationship with its customers."

10. Furthermore, Kraft is failing to effectively represent and promote the Starbucks brand to retail customers. During the recent launch and promotion of new packaging for Starbucks' Seattle's Best Coffee brand, for example, Kraft called on one of the largest grocery store chains in the United States only one month before the promotion was scheduled to launch. Starbucks representatives were present at this meeting and were told that the customer had already made its shelf placement and promotion display decisions months earlier. Consequently, Kraft missed a significant merchandising opportunity related to the Seattle's Best Coffee launch. This example illustrates how damaging any delay in Starbucks' ability to secure merchandising opportunities for 2011 could be to Starbucks' CPG business and overall brand equity.

11. Any delay in the termination of the R&G Agreement or in the steps that Starbucks must take to organize an orderly transition of the marketing, sales, and distribution of Starbucks CPG products will only add to the uncertainty and frustration among Starbucks' retail customers that Kraft has already created and could cause irreparable harm to Starbucks. As set forth above, retailers make their decisions regarding product assortment and merchandising months in advance. Starbucks will be significantly harmed if it continues to miss key distribution or placement opportunities with customers

3

that are uncertain or confused about who will supply Starbucks packaged coffee to them in 2011.

12. The likelihood of harm to Starbucks as a result of a delay in the termination of the R&G Agreement is also heightened by the risk that Kraft, knowing that termination of the R&G Agreement is inevitable, will promote its other coffee products instead of Starbucks' coffee products during the time interval leading up to termination. Because Starbucks will soon be a direct competitor, Kraft has an incentive to hurt Starbucks' ability to compete in the future.

13. Kraft also distributes Starbucks coffee in the form of pods for Kraft's Tassimo® platform. Starbucks has entered into two agreements with Kraft related to Tassimo®. Those agreements provide that Starbucks may terminate the agreements if the R&G Agreement is terminated. On November 5, 2010, when Starbucks announced its intention to terminate the R&G Agreement on March 1, 2011, it also announced its intention to terminate the Tassimo agreements with Kraft on the same date.

14. I have reviewed statements in Kraft's complaint in which Kraft claims that Starbucks has used Kraft's proprietary information related to its Tassimo® platform to develop its own single-serve coffee business (¶¶ 103-105). I am familiar with the planning that Starbucks has done with respect to its single-serve coffee business. That planning has been done without using any proprietary information that Starbucks may have received relating to Kraft's Tassimo® business.

15. I have also reviewed statements in Kraft's complaint in which Kraft claims that failure to enjoin Starbucks from completing the transition of its coffee business may cause Kraft to lose its "Category Captain" status for some products and some retailers (¶¶ 118-122). Even if true, this concern seems irrelevant. Starbucks has terminated the R&G Agreement effective March 1, 2011, and Kraft's request for an injunction, if granted, would affect only the timing of termination, not whether it will occur. Hence, to the extent that Kraft's position as a Category Captain depends on its distribution of Starbucks coffee, that ultimately will happen in the near future regardless of whether Starbucks is allowed to continue its current efforts to ensure an orderly transition.

16. Finally, based on my experience in the consumer products business, it is not uncommon for consumer products suppliers to switch distributors or sales agents. Kraft's allegations that Starbucks' termination of the R&G Agreement will cause Kraft irreparable harm are therefore unfounded. Numerous distributors every year face the same situation Kraft will face on March 1, 2011.

4

  I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____<br>Jeff J. Hansberry

January  6 , 2011

# EXHIBIT A



November 29, 2010


**To Our Valued Customers:**


Today, Kraft Foods announced that it initiated an arbitration proceeding to challenge Starbucks attempt to independently end the agreement under which Kraft Foods has successfully built Starbucks retail grocery coffee business.

Kraft Foods and Starbucks entered into a contract that remains in effect indefinitely, subject to certain limitations and protections.  Kraft Foods reasonably expects Starbucks to honor the contract.  Let me assure you that Kraft Foods is continuing to conduct business under the terms of its contractual arrangements with Starbucks.

Kraft Foods enjoyed a strategic partnership with Starbucks for 12 years.  Thanks to your assistance, together we built the Starbucks business into the success it is today.

We appreciate the support you have given this business.  Until there is resolution to this situation, the Kraft Foods Sales team continues to represent the Starbucks brand at retail. If you have any questions, please contact your Kraft Foods Sales representative.



Regards,


Mike Hsu
President, Sales & Customer Logistics
Kraft Foods North America

# EXHIBIT B



December 16, 2010

Dear Valued Kraft Foods Customer,

Thank you for your patience as Kraft Foods works through its dispute with Starbucks Coffee Company. We sincerely appreciate the help you provided to build this super premium coffee business. Rest assured that we are mindful of your interests, and the enormous support you have shown us through the years.

This situation is unique in our experience, and we are working through it as best we can. And minimizing the impact on you is at the forefront of our thinking. To help you understand what we are facing, we wanted to share a little additional background:

- In late summer, Starbucks offered to buy out the Starbucks and Seattle's Best CPG businesses. Kraft rejected the offer as substantially lower than the business is worth.
- Shortly thereafter, Starbucks suddenly changed course, sending Kraft Foods a letter, alleging breach of contract. We viewed this as an attempt to get the business back without paying us anything at all.
- We sent Starbucks a letter refuting their breach claims as baseless and contesting Starbucks right to terminate. Disregarding our response, that same day, Starbucks publicly announced it was ending its partnership with Kraft.
- Consistent with the contract, Kraft requested a meeting with Starbucks as well as substantiation for the alleged breaches. Starbucks refused both requests. We then initiated arbitration, under the terms of the contract, to try to settle this dispute.
- Starbucks again publicly announced it was moving forward, this time citing an end date of March 1, 2011, and naming Acosta as their new business partner – all this, despite Kraft's initiation of arbitration.
- Therefore, we filed a complaint in federal court seeking a preliminary injunction to stop Starbucks from proceeding as if the agreement has been terminated, when, in fact, the contract is still in force.
- We will continue to pursue the arbitration process and the preliminary injunction on parallel paths.
- Starbucks does have the right to exit the contract in order to pursue an alternate arrangement. But, to do so, it must abide by the contract's terms. In short, Starbucks must pay us for the value of the business we have created for them or show that we've materially breached the contract. To date, Starbucks has done neither.

A ruling on our motion for a preliminary injunction should provide clarity on many of the questions you have about the short term implications of Starbucks actions and communications. In the meantime, we continue to represent the Starbucks and Seattle's Best brands and remain fully committed to servicing your premium coffee needs and growing the business together.

We will keep you apprised of this situation and appreciate your continued understanding.


Mike Hsu
President, Sales and Customer Logistics
Kraft Foods North America

# EXHIBIT C

# KRAFT FOODS INC.

Marc S. Firestone
Executive Vice President,
Corporate & Legal Affair and
General Counsel
marc.firestone@kraft.com
(847) 646-4051 (Phone)
(847) 646-2950 (Fax)

January 4, 2011

Drew Prusiecki, Esq.
General Counsel and Secretary
Acosta Sales and Marketing
6600 Corporate Center Parkway
Jacksonville, Florida 32216

Dear Mr. Prusiecki,

Under the terms of a 2004 agreement, Kraft owns the exclusive right to sell Starbucks roast and ground and whole bean coffee in certain retail channels. The agreement explicitly prohibits Starbucks from "directly or indirectly" marketing, distributing or selling those products in the covered retail channels for so long as the agreement remains in effect.

As you are aware, Starbucks has purported to terminate the 2004 agreement effective March 1, 2011. Starbucks has also indicated that it is working in conjunction with Acosta instead of Kraft to sell Starbucks products in retail channels covered by the agreement. Kraft vigorously disputes the validity of Starbucks purported termination of the agreement. Kraft has initiated an arbitration proceeding in which it expects to establish that the 2004 agreement will remain in effect until there has been a valid termination of it. Kraft is also seeking an injunction to prevent Starbucks from taking over the business pending the outcome of the arbitration.

In light of the exclusivity and other provisions of the agreement, any attempt by Starbucks -- either before or after March 1, 2011 -- to market, distribute or sell the Starbucks products in question other than through Kraft would be a clear breach of Starbucks contractual obligations to Kraft and would also constitute tortious interference with Kraft's business relationships with its customers. Likewise, any participation by Acosta in such activities would constitute tortious interference with Kraft's contractual relationship with Starbucks as well as Kraft's business relationships with its customers.

Needless to say, Kraft will not refrain from taking appropriate action as necessary to protect its rights.

If you have not received a copy of the 2004 agreement, I am happy to provide it to you.

Thank you for your attention to this matter.

Sincerely yours,

*Marc Firestone*

Marc S. Firestone