UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC., Plaintiff, | CASE NO. 10 CV 09085 (CS)<br>ECF Case |
| -against- | **PLAINTIFF'S REPLY MEMORANDUM ON "IRREPARABLE HARM" IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION** |
| STARBUCKS CORPORATION, Defendant. | |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ........ 1

II. STARBUCKS' CONTRACT-BASED ARGUMENTS ARE WITHOUT MERIT........ 1

- A. Starbucks Cannot Hide Behind the "Buy Out" Provision ........ 1
- B. Starbucks Cannot Deny Kraft The Benefit Of The Arbitration Provision........ 3

III. STARBUCKS MISINTERPRETS THE NATURE OF "IRREPARABLE HARM"........ 6

- A. Irreparable Harm Exists When The Status Quo Ante Cannot Be Restored........ 6
- B. Irreparable Harm May Exist Even If Some Injuries Can Be Calculated........ 6
- C. There is No Quantitative Threshold for Irreparable Harm ........ 7
- D. The Risk of Irreparable Harm Cannot Be Evaluated In Isolation........ 9

IV. THE BALANCE OF THE EQUITIES FAVORS KRAFT ........ 9

V. CONCLUSION........ 10

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

Alcatel Space, S.A. v. Loral Space & Commc'ns Ltd.,
154 F. Supp. 2d 570 (S.D.N.Y. 2001)....................8

Blumenthal v. Merrill Lynch Pierce, Fenner & Smith, Inc.,
910 F.2d 1049 (2d Cir. 1990)....................4

Brenntag Intern. Chemicals, Inc. v. Bank of India,
175 F.3d 245 (2d Cir. 1999)....................6

Citigroup Global Mrkts, Inc. v. VCG Special Opportunities Master Fund Ltd.,
598 F.3d 30 (2d Cir. 2010)....................9

ECRI v. McGraw-Hill, Inc.,
809 F.2d 223 (3rd Cir. 1987) ....................4

E.E.O.C. v. Astra USA, Inc.,
94 F.3d 738 (1st Cir. 1996)....................9

In re Enron Corp.,
292 B.R. 752 (Bankr. S.D.N.Y. 2003)....................6

Erving v. Virginia Squires Basketball Club,
468 F.2d 1064 (2d Cir. 1972)....................4

Ferry-Morse Seed Co. v. Food Corn, Inc.,
729 F.2d 589 (8th Cir. 1984) ....................5

Hamilton Watch Co. v. Benrus Watch Co.,
206 F.2d 738 (2d Cir. 1953)....................9

International Bus. Machines Corp. v. Johnson,
629 F. Supp. 2d 321 (S.D.N.Y. 2009)....................9

Interphoto Corp. v. Minolta Corp.,
417 F.2d 621 (2d Cir. 1969)....................8

Jacobs & Co. v. Armstrong Cork Co.,
548 F.2d 438 (2d Cir. 1977)....................8

Metropol. Detroit Plumbing & Mechanical Contractors Associate v. Department of HEW,
418 F. Supp. 585 (E.D.Mich. 1976)....................9

Morgan Stanley v. Seghers,
Case No. 10-5378, 2010
WL. 3952851 (S.D.N.Y. Oct. 8, 2010)....................9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

MultiChannel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,
22 F.3d 546 (4th Cir. 1994) ....................7

Oracle Real Estate Holdings I LLC v. Adrian Holdings Co I, LLC,
582 F. Supp. 2d 618 (S.D.N.Y. 2008)....................4

Packard Instrument Co. v. Ans, Inc.,
416 F.2d 943 (2d Cir. 1969)....................9

Penney Co., Inc. v. Giant Eagle, Inc.,
813 F. Supp. 360 (W.D.Pa. 1992),
aff'd, 995 F.2d 217 (3d Cir. 1993).t ....................5

Register.com, Inc. v. Verio, Inc.,
356 F.3d 393 (2d Cir. 2004)....................7

Reuters Ltd. v. United Press International, Inc.,
903 F.2d 904 (2d Cir. 1990)....................9

Rex Medical L.P. v. Angiotech Pharm., Inc.,
Case No. 10-8746, 2010
WL. 4977775 (S.D.N.Y Dec. 1, 2010) ....................6

Roso-Lino Beverage Distributing, Inc. v. Coca-Cola Bottling Co.,
749 F.2d 124 (2d Cir. 1984)....................4

Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,
102 F.3d 12 (1st Cir. 1996)....................8, 9

Salinger v. Colting,
607 F.2d 68 (2d Cir. 2010)....................4

Semmes Motors, Inc. v. Ford Motor Co.,
429 F.2d 1197 (2nd Cir. 1970)....................7

Studebaker Corp. v. Gittlin,
360 F.2d 692 (2d Cir. 1966)....................6

Supermarket Services, Inc. v. Hartz Mountain Corp.,
382 F. Supp. 1248 (S.D.N.Y. 1974)....................7

Ticor Title Insurance Co. v. Cohen,
173 F.3d 63 (2d Cir. 1999)....................7

Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.,
60 F.3d 27 (2d Cir. 1995) ....................8

Triebwasser & Katz v. America Telegraph & Telegraph Co.,
535 F.2d 1356 (2d Cir. 1976)....................9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Walgreen Co. v. Sara Creek Prop. Co. B.V.,
966 F.2d 273 (7th Cir. 1992) ....................................................................................5

# TABLE OF AUTHORITIES

**Page**

## STATE CASES

185 Lexington Holding Corp. v. Holman,
189 N.Y.S.2d 269 (N.Y. Sup. Ct. 1959) ....................................................................6

Wallace v. 600 Partners Co.,
618 N.Y.S.2d 298 (N.Y. App. Div. 1994),
aff'd, 86 NY2d 543 (1995) ....................................................................................6

## I. INTRODUCTION

For 12 years, Kraft has owned contractual rights that allowed it to build a half billon dollar per year business. That business, however, exists at the mercy of Starbucks. Because Starbucks controls the supply of Starbucks CPG Products, it has the *de facto* power to seize control of the business at any time. But having the *power* to take over the business is not the same as having the *legal right* to do so. With this unchecked power to effectuate termination of the Agreement, Starbucks can as easily take the business away from Kraft out of pure, unapologetic avarice as it can based on an actual material breach or other *bona fide* legal right. In this case, for Starbucks, it was enough to simply *allege* that Kraft had materially breached the Agreement and it did so believing that the merits of those allegations would not be scrutinized until after they had achieved their purpose.

Kraft has appealed to the equitable powers of this Court because only the exercise of those powers will spare Kraft the irreparable consequences of Starbucks' indifference to Kraft's bargained-for rights. Starbucks has responded by urging the Court to look the other way. It strings together rote recitations of the irreparable harm standard that greatly oversimplify its true nature. It also takes refuge in the fictions that large companies like Kraft are incapable of suffering irreparable harm and that, in the context of commercial disputes, all forms of economic harm injury can be remedied through money damages.

Rather than deny Kraft's motion based on myths about the nature of irreparable harm, the Court should contrast the consequences of denying Kraft's motion with the consequences of granting it. That contrast reveals that the Court faces a straightforward choice between allowing irremediable harm and preventing it.

Rather than address what is truly at stake, Starbucks' opposition to Kraft's motion for a preliminary injunction is a trap for the unwary for it suffers from two principal flaws. First, Starbucks' opposition is premised, not on the bargained for termination rights in the parties' agreement, but on termination rights that Starbucks has unilaterally manufactured for its own profit. Second, it is based on a fundamental misunderstanding about the nature of "irreparable

harm" and the role that this concept plays in the preliminary injunction inquiry. Because Starbucks' arguments are not supported by the express terms of the parties' contract or by the well-established law of the Second Circuit, they should be rejected and this Court should move to a full consideration of Kraft's motion for a preliminary injunction.

## II. STARBUCKS' CONTRACT-BASED ARGUMENTS ARE WITHOUT MERIT

### A. Starbucks Cannot Hide Behind the "Buy Out" Provision

Under Paragraph 5(b)(ii) (the "Buy Out" provision), Starbucks has the right to terminate the R&G Agreement on the condition that it does two things: (1) pay Kraft the "Fair Market Value" of the business that Kraft built *plus* a premium of up 35% of the Fair Market Value; ***and*** (2) provide Kraft with "not less than one hundred eighty (180) days prior written notice" of its intent to terminate (hereinafter "Changeover Window"). Based on this provision, Starbucks argues that, if it effectuates termination for material breaches that the arbitrator later determines did not occur, Kraft will nonetheless be saved from irreparable harm because it will be entitled to a monetary remedy in the form of the Buyout Payment required by Paragraph 5(B)(ii) of the Agreement.

That is not correct. While it is true that Kraft would be entitled to the Buyout Payment, that payment would not fully compensate Kraft for the loss of its rights under the R&G Agreement. Among other things, Kraft will still have been denied the benefit of the Changeover Window. Denial of that benefit will cause Kraft clear and irreparable harm.

Having the Changeover Window is vitally important to Kraft because it mitigates the competitive harm Kraft would incur upon the loss of its ability to sell Starbucks products, its only offering in the super premium coffee category. Before receiving notice of termination pursuant to the Buyout Provision, Kraft has no right to sell competing super premium coffee nor does it have a reason to formulate and execute plans for doing so. But that would change on the day the Buyout Provision is triggered. Kraft would know for certain that, six months later, the contract will end and Kraft will no longer have the ability to sell Starbucks CPG products -- but that it will have the ability to offer a competing super premium brand. Kraft cannot, however,

position itself to compete with Starbucks and other super premium brands overnight.[1]

The benefits of the Changeover Window would be lost to Kraft in the absence of an injunction. Kraft has not been provided with a single day to prepare in earnest for termination, because it is seeking specific performance of the Agreement and thus does not know whether termination will occur. Consequently, it cannot make the contractual commitments needed to replace Starbucks if and when it does occur. As discussed at length in the Declarations of Professor Stephen Hoch and Ms. Helene Bates (filed concurrently herewith), Kraft will suffer irreparable harm because the "buy out" provision's Changeover Window of certainty is absent. Instead, because the breach allegations are wholly specious, Kraft has challenged the 5(B)(iii) Material Breach termination and seeks specific performance under the Agreement. Kraft will win the arbitration and it has the right to maintain this Agreement. As a result, unless and until Starbucks invokes the Buy Out provision and provides for the Changeover Window, it cannot turn back the clock and claim "back up" compliance with the non-monetary aspects of Paragraph 5(B)(ii) for the purposes of scuttling Kraft's right to an injunction.

Moreover, Starbucks has articulated no valid reason for denying Kraft the Changeover Window or its right to a meaningful arbitration under the R&G Agreement's dispute resolution provisions with the effect of exposing it to multiple forms of irreparable harm. It offers no plausible explanation for its selection of March 1, 2011 as the date for termination. Why March 1, 2011? The arbitrariness of the purported termination date selected by Starbucks exposes the hollowness of Starbucks' arguments.

As demonstrated in the moving papers, Kraft is posting record revenues for the Kraft/ Starbucks CPG Business in 2010.[2] As a result, there is no commercial justification or contractual obligation that would permit this Court to expose Kraft to irreparable harm merely to meet Starbucks' arbitrary and purported termination date.

---

[1] *See* Declaration of Stephen J. Hoch, Ph.D, January 13, 2011, filed concurrently herewith ("Hoch Decl."), ¶¶ 13-25; Declaration of Helene Bates, January 13, 2010, filed concurrently herewith ("Bates Decl."), ¶¶ 6-27.

[2] *See* Acker Decl., ¶, 79 (Starbucks 2010 revenues grew at 8% - ***4 times*** the growth for total U.S. coffee sales).

**B. Starbucks Cannot Deny Kraft The Benefit Of The Arbitration Provision**

In its moving papers, Kraft established that it had a bargained-for right to seek a full measure of damages for Starbucks' bad faith, opportunistic breach – including specific performance – pursuant to the dispute resolution process in the R&G Agreement. And absent a preliminary injunction, Kraft would be irreparably harmed by being stripped of its right to arbitration and the remedy of specific performance. In opposition, Starbucks does not challenge Kraft's right to seek specific performance in arbitration, nor does it address the many cases cited by Kraft. Instead, Starbucks argues that it can terminate a 12-year, multi-billion dollar business based on nothing more than the mere assertion that Kraft materially breached the parties' agreement and, therefore, Kraft cannot be harmed. Starbucks' position not only defies common sense, it runs counter to the applicable law and the parties' agreement.

***First***, the Second Circuit has determined that as a matter of law, the denial of a party's right to a meaningful arbitration – including the right to seek all remedies available – constitutes irreparable harm.[3] In this case, absent the issuance of an injunction, Kraft will be stripped of its right to seek specific performance in the arbitration when Starbucks takes the business on March 1, 2011. It is fundamentally unfair, and exposes Kraft to severe irreparable harm, if Starbucks is permitted to wrest control of the business and extinguish any opportunity for Kraft to achieve its right to specific performance.[4] Despite any suggestion to the contrary, there is nothing in the parties' agreement that limits the type of relief that Kraft may seek in response to a Material Breach by Starbucks. Nor can Starbucks point to any legal authority that holds otherwise.[5]

---

[3] *Se,e e.g. Blumenthal v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053 (2d Cir. 1990); *Roso-Lino Beverage Distrib., Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124, 125 (2d Cir. 1984).

[4] *See, e.g. Oracle Real Estate Holdings I LLC v. Adrian Holdings Co I, LLC*, 582 F. Supp. 2d 618, 625 (S.D.N.Y. 2008) (granting preliminary injunction, stating "'The premise of the preliminary injunction is that the remedy available at the end of trial will not make the plaintiff whole'"). *See generally*, *Salinger v. Colting*, 607 F.2d 68, 81 (2d Cir. 2010) (stating harm "might be irremediable, or irreparable, for many reasons, including that ***a*** loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer").

[5] The principal case upon which Starbucks relies, *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223 (3rd Cir. 1987), is completely distinguishable. ***First***, *ECRI* is not a Second Circuit case. ***Second***, the reason why *ECRI* is such an outlier is because it seemingly espouses a singular standard for the issuance of a preliminary injunction, a standard that has not been adopted by the Second Circuit. *See ECRI*, 809 F.2d at 226 (requiring a plaintiff to prove a "clear showing of immediate irreparable injury"). ***Third***, and perhaps most important for the purposes here, the termination provisions at issue in *ECRI* are dramatically different than those at issue here. The other termination

***Second***, Starbucks' effort to evade the dispute resolution provision in the agreement also poses irreparable harm to Kraft. The one argument Starbucks does make is that because the contract does not ***explicitly*** provide that Starbucks must wait for an arbitrator's ruling on Material Breach, it, therefore, may proceed to termination, regardless of the legitimacy of its actions. Starbucks' flimsy argument must be rejected. A party's termination right under 5(B)(iii) is inextricably linked to the dispute resolution provision under Paragraph 15. Under that provision, the parties agreed (1) to arbitrate "***any*** claim or controversy arising out of or relating to this Agreement," which clearly includes a claim of Material Breach; and (2) to preserve the status quo pending the arbitration by seeing a preliminary injunction in this Court. In addition, the definition of Material Breach provides for the parties' right to assert a claim of Material Breach "*in proceedings under Section 15 of this Agreement*" for a breach of provisions that are not specifically described as Material Breaches. In short, any assertion of a Material Breach cannot be divorced from the parties' agreement to arbitrate "any" dispute.

Even if Starbucks' self-serving "interpretation" of its termination rights was not contrary to the law and the plain language of the R&G Agreement, simple prudence would counsel against the adoption of such an extreme argument to protect the random termination date of March 1, 2011. If, as is likely, Starbucks is shown to be wrong – *i.e*., that there was no Material Breach by Kraft – but a preliminary injunction was denied, then Kraft would suffer a range of injuries (*e.g*., customer confusion, loss of good will, diminished business reputation and a loss of bargained-for business opportunity) for which there is no monetary compensation. Consequently, it is not surprising that many courts regard a preliminary injunction to be presumptively appropriate in a situation where there is an exclusivity arrangement.[6]

---

provision at issue allowed defendant, *in its sole discretion*, to terminate publication upon 90 days written notice, plaintiff was *required* to accept defendant's offer. *Id*. at 226-27. This provision is vastly different from Paragraph 5.B(ii) of the R&G Agreement, under which Kraft is not required to accept any offer from Starbucks to purchase the R&G business and Starbucks does not have the right, in its sole discretion, to terminate the contract simply by giving notice. In short, *ECRI* has the termination provision that Starbucks plainly wishes it had here. However, no amount of wishing by Starbucks can change the reality of the agreement that it freely entered into and profited from for more than a decade.

[6] *See, e.g., Ferry-Morse Seed Co. v. Food Corn, Inc*., 729 F.2d 589, 592 (8th Cir. 1984) (affirming preliminary

In short, Starbucks' central argument asks this Court to effectively ignore the well developed case law protecting a party's contractual right to arbitration – a right that Kraft negotiated and bargained for – and, while mediation/arbitration on the parties' agreement is pending, replace it with one whose termination rights Starbucks has unilaterally manufactured. Starbucks' request is wholly improper[7] and, accordingly, should be summarily rejected.

## III. STARBUCKS MISINTERPRETS THE NATURE OF "IRREPARABLE HARM"

Throughout its opposition brief, Starbucks misconstrues the nature of what constitutes "irreparable harm" for the purposes of a preliminary injunction.

### A. Irreparable Harm Exists When The *Status Quo Ante* Cannot Be Restored.

In its opposition, Starbucks argues that "irreparable harm" has but one meaning – a harm that is incapable of being fully remedied by money damages. Such a position is flatly contrary to that of the Second Circuit, which has long recognized that "[r]ecitiation of this term generally produces more dust than light."[8] Starbucks simply maintains that "'[a]n essential component of 'irreparable harm' is that it is incapable of being fully remedied by money damages.'"[9] While the insufficiency of monetary compensation is ***a*** component of the definition of irreparable harm, it is ***not*** the only component to be considered. As the Second Circuit has explained, "a perhaps more accurate description of the circumstances that constitute irreparable harm is that ***where, but***

---

injunction because breach of exclusive distribution agreement constituted irreparable harm where company was disadvantaged in competitive market by inability to market unique seed corn, describing situation as "a classic situation for preliminary injunctive relief"). *See generally Walgreen Co. v. Sara Creek Prop. Co. B.V.*, 966 F.2d 273, 279 (7th Cir. 1992) (affirming preliminary injunction and observing that such relief may be presumptively appropriate upon the breach of an exclusivity agreement); *.J.C. Penney Co., Inc. v. Giant Eagle, Inc*., 813 F.Supp. 360, 368 (W.D.Pa. 1992) (citing *Walgreen Co*. for proposition that irreparable harm is almost always inherent in cases for breach of an exclusivity agreement), *aff'd*, 995 F.2d 217 (3d Cir. 1993).

[7] *See Wallace v. 600 Partners Co*., 618 N.Y.S.2d 298, 301 (N.Y. App. Div. 1994) ("[C]ourts should ***not***, under the guise of interpretation, rewrite part of an agreement which is clear and explicit simply because a party's expectation of the bargain does not materialize due to a change in economic climate") (emphasis added), *aff'd*, 86 N.Y.2d 543 (1995); *185 Lexington Holding Corp. v. Holman*, 189 N.Y.S.2d 269, 270 (N.Y. Sup. Ct. 1959) (holding that "a poor bargain may ***not*** be made good by judicial construction or recasting of the contract") (emphasis added); *In re Enron Corp*., 292 B.R. 752, 782 (Bankr. S.D.N.Y. 2003) (courts will not impose obligations on parties to contract that would be inconsistent with other terms of contractual relationship, and for which the parties did not bargain).

[8] *Studebaker Corp. v. Gittlin*, 360 F.2d 692, 698 (2d Cir. 1966) (affirming preliminary injunction).

[9] Opp., p. 15.

***for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied***."[10] Last month, a court in this district issued a preliminary injunction pending the resolution of an arbitration because the plaintiff, like Kraft here, faced a "'loss of reputation, good will and business opportunities' from a breach of contract" and such injuries "constitute irreparable harm."[11]

**B. Irreparable Harm May Exist Even If Some Injuries Can Be Calculated.**

Starbucks' suggestion that, in the context of commercial litigation, all harms ultimately involve a "loss of money" is flatly contrary to Second Circuit law. The Second Circuit does not engage in such reductionist reasoning. The issue for the Second Circuit is not whether an injury involves a "loss of money," but whether the loss of money from a particular harm can be reasonably calculated. The Second Circuit has consistently held that injuries to a plaintiff's good will, business reputation, and business opportunities are generally irreparable because they cannot be calculated reasonably.[12] Indeed, any suggestion that a "mixed" injury claim – *i.e.*, one involving both calculable and incalculable injuries – is not eligible for preliminary injunction relief, is contrary to the law of the Second Circuit.[13]

---

[10] *Brenntag Intern. Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d Cir. 1999).

[11] *Rex Medical L.P. v. Angiotech Pharm., Inc*., Case No. 10-8746, 2010 WL 4977775 *4 (S.D.N.Y Dec. 1, 2010).

[12] *See, e.g*., *Register.com, Inc. v. Verio, Inc*., 356 F.3d 393, 404 (2d Cir. 2004) (affirming finding of irreparable harm where "district court found it impossible to estimate with any precision the amount of the monetary loss which ha[d] resulted and which would result in the future from the loss of [movant's] relationships with customers and co-brand partners by reason of" the defendant's actions) (internal citations omitted); *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (affirming preliminary injunction, stating "it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come"). *See also MultiChannel TV Cable Co. v. Charlottesville Quality Cable Co*., 22 F.3d 546, 551-52 (4th Cir. 1994) (affirming preliminary injunction, stating "when 'the record indicates that [plaintiff's loss] is a matter of simple mathematic calculation,' a plaintiff fails to establish irreparable injury for preliminary injunction purposes" but "*when the failure to grant preliminary injunctive relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable harm prong is satisfied*") (emphasis added).

[13] *See, e.g*., *Semmes Motors, Inc. v. Ford Motor Co*., 429 F.2d 1197, 1205 (2nd Cir. 1970) (affirming preliminary injunction, stating "Ford's contention that Semmes failed to show irreparable injury is wholly unpersuasive. ***Of course Semmes' past profits would afford a basis for calculating damages for wrongful termination …. But the right to continue a business … is not measured entirely in monetary terms***") (emphasis added); *Supermarket Services, Inc. v. Hartz Mountain Corp*., 382 F.Supp. 1248, 1256 (S.D.N.Y. 1974) (granting preliminary injunction, stating "[A]lthough …the lost sales to the old customers may be calculated …***damages due to lost sales to new customers cannot be calculated*** ….") (emphasis added).

### C. There is No Quantitative Threshold for Irreparable Harm.

Starbucks, throughout its opposition, repeatedly asserts that unless Kraft can show that the harm it confronts meets some undefined quantum of injury, then the harm cannot be deemed to be irreparable.[14] Starbucks' argument suffers from a number of problems. ***First***, Starbucks, tellingly, does not and cannot cite to any authority stating that large corporations, such as Kraft, are not entitled to the protection of a preliminary injunction, especially when such relief is directed against another, large sophisticated corporation. ***Second***, the fact that Kraft as a corporate entity will survive if an injunction is not issued is irrelevant. The appropriate inquiry is not whether a corporate entity will "live or die" without an injunction, but whether it suffers some irreparable harm, such as the loss of a business opportunity, in the absence of an injunction. Indeed, one of Starbucks' own cases (*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*,[15]) makes this very point.

In *Tom Doherty*, the Second Circuit affirmed a preliminary injunction even though there was absolutely no risk that the plaintiff's overall business or that a specific product line would fail in the absence of such relief. In reaching its decision, the Second Circuit identified a "governing principle":

> We believe that the governing principle is as follows. ***Where the availability of a product … increases the business of the plaintiff beyond sales of that product***--for example, by attracting customers who make purchases of other goods while buying the product in question--***the damages caused by loss of the product will be far more difficult to quantify than where sales of one of many products is the sole loss.*** In such cases, injunctive relief is appropriate.[16]

Here, Kraft, like the plaintiff in *Tom Doherty*, is at no risk of losing its entire business or losing its entire coffee business in the absence of a preliminary injunction. Kraft, however, also like the plaintiff in *Tom Doherty*, is at risk of losing a "unique product line that will allow [its] overall business to expand." The decision in *Tom Doherty* is consistent with a long line of

---

[14] *See, e.g.*, Opp., pp. 1-2, 16.

[15] 60 F.3d 27 (2d Cir. 1995).

[16] *Id.* (emphasis added); *see also Alcatel Space, S.A. v. Loral Space & Commc'ns Ltd.*, 154 F. Supp. 2d 570, 584 (S.D.N.Y. 2001) ("Although the loss of these contracts may not destroy Alcatel's business, the limited number of satellite opportunities available warrants a finding of irreparable harm").

decisions by the Second Circuit, which have recognized that the loss of a prestigious brand or product line may create a threat of irreparable injury if it is likely that customers (or prospective customers) will turn to competitors who do not labor under the same handicap.[17]

**D. The Risk of Irreparable Harm Cannot Be Evaluated In Isolation.**

Starbucks' misguided focus on the magnitude of Kraft's irreparable harm at this stage of the proceeding reflects a fundamental misunderstanding about the entire preliminary injunction inquiry. Under Second Circuit law, an inverse relationship may exist between irreparable harm and likelihood of success on the merits: "the decision to grant or to deny a preliminary injunction depends on a flexible interplay between the likelihood of irreparable harm to the movant and the court's belief that there is a 'reasonable certainty' that the movant will succeed on the merits at a final hearing."[18] In short, "an attempt to show irreparable harm cannot be evaluated in a vacuum; the predicted harm and the likelihood of success on the merits ***must*** be juxtaposed and weighed in tandem."[19] The magnitude of Kraft's likely irreparable harm matters only when it is considered in conjunction with Kraft's likelihood of success on the merits. Once any type of irreparable harm in any quantity is found, the analysis shifts to a consideration of all factors.[20]

---

[17] *See, e.g.*, *Jacobs & Co. v. Armstrong Cork Co.* 548 F.2d 438, 444 (2d Cir. 1977); *Interphoto Corp. v. Minolta Corp*., 417 F.2d 621, 622 (2d Cir. 1969) (*per curiam*). The approach of the Second Circuit in this regard has been followed by other circuits. *See, e.g.*, *Ross-Simons of Warwick, Inc. v. Baccarat, Inc*., 102 F.3d 12, 18-19 (1st Cir. 1996) a party seeking preliminary injunctive relief "need ***not*** demonstrate that the denial of injunctive relief will be fatal to its business"; instead, a plaintiff need only show the likelihood of a loss of sales from other items, a potential loss of future customers and/or "harm to its reputation" – such losses would "defy accurate quantification") (emphasis added).

[18] *Packard Instrument Co. v. Ans, Inc*., 416 F.2d 943, 945 (2d Cir. 1969); *see also Morgan Stanley v. Seghers*, Case No. 10-5378, 2010 WL 3952851 (S.D.N.Y. Oct. 8, 2010); *Triebwasser & Katz v. Am. Tel. & Tel. Co.*, 535 F.2d 1356, 1359 (2d Cir. 1976) ("If the element of irreparable damage is prerequisite for relief where the plaintiff must show probable success on the merits, then a fortiori where the plaintiff establishes something less than probable success on the merits, need for proof of the threat of irreparable damage is even more pronounced"); *Int'l Bus. Machs. Corp. v. Johnson*, 629 F. Supp. 2d 321, 329 (S.D.N.Y. 2009) (same).

[19] *Baccarat, Inc*., 102 F.3d at 19 (emphasis added); *see also E.E.O.C. v. Astra USA, Inc*., 94 F.3d 738, 743-44 (1st Cir. 1996) ("when the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief."); *Metropol. Detroit Plumbing & Mech. Contractors Assoc. v. Dept. of HEW*, 418 F.Supp. 585, 586 (E.D.Mich. 1976) (relying on Second Circuit case law to argue that "In general, the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction").

[20] *Citigroup Global Mrkts, Inc. v. VCG Special Opportunities Master Fund Ltd*., 598 F.3d 30, 38 (2d Cir. 2010) (affirming the continuing validity of the flexible "sliding scale" approach to the traditional four- factors).

## IV. THE BALANCE OF THE EQUITIES FAVORS KRAFT

Starbucks argues that "the balance of equities weighs decidedly in favor of Starbucks." Opp., p. 25. Starbucks' argument suffers from three principal problems. ***First***, the injunction sought by Kraft would not impose any new obligations on Starbucks; it simply would require Starbucks to honor the parties' agreement for a short-time longer. As the Second Circuit has held, there is no hardship when a defendant "need do only what it has done."[21] Indeed, as previously noted, Kraft is posting record revenues for Starbucks in 2010. ***Second***, Starbucks' argument that Kraft would be incentivized to mismanage the business during the period of time of an injunction ignores the fact that Kraft receives 50% of the profits. There is, in other words, no incentive to mismanage. ***Third***, even if Starbucks could show an injury, such as a loss in sales, any such injury is not an irreparable one, but compensable by money damages. In contrast, as discussed above and as demonstrated in its moving papers, Kraft is confronted with a range of irreparable harms.

## V. CONCLUSION

Starbucks wants to have its cake and eat it too – it wants to change strategic direction (*i.e.*, take back control of its branded products), but avoid having to pay the agreed-upon price for such a change (*i.e.*, wait 180 days and pay the Fair Market Value). As a result, it has not only manufactured unsupportable allegations of material breach, it has made up a whole new termination procedure, one in which it gets to take control of the business Kraft built and force Kraft to either secure a preliminary injunction or breach its exclusivity obligations. By any definition, this is not equitable. Accordingly, Kraft respectively requests that the Court find that it is faced with imminent and irreparable harm and, as a result, it is entitled to a full consideration of its motion for a preliminary injunction.

---

[21] *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 909 (2d Cir. 1990). Indeed, the modest relief requested by Kraft is entirely consistent with the essential nature of a preliminary injunction. A preliminary injunction "is, by its very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive …It serves as an equitable policing measure to prevent the parties from harming one another during the litigation; to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began." *Hamilton Watch Co. v. Benrus Watch Co*., 206 F.2d 738, 742 (2d Cir. 1953).

Dated: New York, New York.
January 13, 2011

*Of Counsel:*

William P. Quinn (admitted *pro hac vice*)
wquinn@morganlewis.com
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Phone: 215.963.5000
Fax: 215.963.5001
*-and-*
Michael S. Kraut
mkraut@morganlewis.com
MORGAN, LEWIS & BOCKIUS, LLP
101 Park Avenue
New York, NY 10178
Phone: 212.369.6000
Fax: 213.369.6001

*Attorneys for Plaintiff Kraft Foods Global, Inc.*

Respectfully submitted,

Morgan, Lewis & Bockius, LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
213.612.2500

By:__________/s/__________
Kathleen M. Waters (admitted *pro hac vice*)
kwaters@morganlewis.com