IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRAFT FOODS GLOBAL, INC.,<br><br>       Plaintiff,<br><br>    v.<br><br>STARBUCKS CORPORATION,<br><br>       Defendant. | Civil No. 10-9085 (CS)<br>ECF Case |

# DECLARATION OF LARRY CRONIN

I, Larry Cronin, declare under penalty of perjury:

1. I am currently the Director of National Retail Merchandising for the Consumer Packaged Goods ("CPG") Group at Starbucks Corporation. From October 2009 to December 1, 2010, I was the Director of Sales for the CPG group. From 2004 until October 2009, I held the position of National Sales Manager in the CPG group.

2. In my current position as Director of National Retail Merchandising, I oversee all retail sales execution efforts for several of Starbucks' coffee lines in the CPG market, including Starbucks, Seattle's Best Coffee ("SBC"), and VIA. For approximately the last five years, I have also had primary responsibility for managing all sales aspects of Starbucks' relationship with Kraft Foods Global, Inc. ("Kraft").

3. Since I started at Starbucks in 2004, Kraft has had the exclusive right to sell Starbucks packaged coffee, including SBC and Torrefazione Italia branded coffee, in grocery stores and other important sales channels in the United States under the Supply and License Agreement, known as the Roast and Ground Agreement or "R&G Agreement."

4. I have been involved in sales for more than 30 years. In my experience, the relationship between Starbucks and Kraft is unusual, in that while Kraft has the right to distribute Starbucks coffee in the CPG channel, the strength of the brand and its image have been developed in a different retail channel – that is, Starbucks retail coffeehouses.

5. Because the distribution of Starbucks coffee both depends on and may have an impact on the Starbucks brand overall, Starbucks wants and needs to take an active role in both sales and marketing efforts with respect to its products in the CPG channel. When I arrived at Starbucks in 2004, I learned that the parties had recently renegotiated the agreement, in part to spell out Kraft's obligation to include Starbucks in those efforts.

6. As I discuss in more detail below, throughout the time I have been at Starbucks, I have made efforts, directly with my counterpart at Kraft, Mike Prchlik, to be involved at all stages with sales efforts, particularly those directed at the Top 9 retail accounts. Starbucks involvement in those efforts is critical to ensure that the brand and our products are effectively presented to our customers – that is, CPG retailers. In my experience, because Starbucks is, for Kraft, just one brand among many, Kraft does not make commercially reasonable efforts – in view of the enormous power of Starbucks brand – to sell Starbucks products effectively. Instead, it treats Starbucks as no different from the dozens of mass-market brands that Kraft distributes.

7. Where I have been included in sales planning and sales calls, I have been able to present Starbucks products and its brand much more effectively and to communicate to customers some of what makes Starbucks such an extraordinary company and its brand so powerful. That translates into greater retailer enthusiasm and, in my judgment, higher sales. Where I have been excluded from sales efforts, that advantage has been lost.

8.      From my perspective, it appears that Kraft's refusal to include Starbucks in sales efforts has been a deliberate decision on Kraft's part that allowing Starbucks a greater role in sales efforts would distract attention from Kraft's other brands (including its coffee brands); in addition, I have gotten the impression that Kraft does not want Starbucks to cultivate relationship with CPG customers.

9.      Kraft has consistently excluded Starbucks from most annual sales planning meetings with customers or the Kraft sales team, has not invited Starbucks to attend most strategic sales calls with key retail customers, and has failed to provide to Starbucks all sales presentations for customers.  As a result, Starbucks is unable to ensure that its products are appropriately and effectively presented to key customers or that Kraft's sales messaging is consistent with Starbucks' brand image.

10.     Kraft's refusal to include Starbucks in sales efforts has continued despite my repeated statements to Mike Prchlik that I wanted to be included in those sales efforts.

11.     In part, I believe, because Kraft has excluded Starbucks from greater involvement in the sales effort, Kraft's sales performance has been poor.  Starbucks' performance in the CPG market has suffered since the R&G Agreement was signed in 2004.  Indeed, although the overall premium coffee category has expanded, Starbucks' market share of this category has fallen each and every year since 2004.  Market share – not gross revenue – is the most important metric in measuring the growth of a retail brand.

<u>Kraft's Failure to Involve Starbucks in Sales Planning</u>

12.     I am familiar with the provision of the R&G Agreement that requires Kraft to provide Starbucks a reasonable opportunity to be involved in all significant sales planning for Starbucks' CPG products.   That simply has not happened, despite Starbucks' repeated requests.

3

13. It is my understanding that in the beginning of each year, Kraft typically holds an internal planning meeting for each significant retail customer, in order to develop an annual sales plan for Starbucks' products. The most significant retail customers for Starbucks' CPG products are Costco, Walmart, Target, Kroger, Safeway, Publix, Supervalu, Sam's, and Meijer. These "Top 9 customers" account for approximately 73% of Starbucks' sales on a volume bases.

14. Although I have asked my counterpart at Kraft, Mike Prchlick, who is the Director of Business Development, on numerous occasions that I be invited to attend these annual planning meetings, Kraft has regularly excluded me.

15. In connection with this declaration, I have reviewed my calendar entries for 2008, 2009, and 2010. It is a routine business practice of mine to enter all of my business travel and all meetings that I have with Kraft and/or retail customers into my calendar. My calendar entries reflect that I attended only two annual planning meetings for Starbucks' Top 9 customers during these three years. Both of these meetings took place in 2009. I attended no annual sales planning meetings in 2008, and no annual sales planning meetings in 2010. Again, Kraft excluded me from these meetings despite my direct requests that Starbucks be included.

16. Starbucks has also asked Kraft to provide it with all copies of Kraft's annual sales plans for the Top 9 customers, which are developed at these annual sales planning meetings. Kraft has rarely provided Starbucks with copies of these annual sales plans. On the few occasions when these plans have been provided, they often lack substantial detail. Despite my repeated requests for detailed annual sales plans, Kraft has not provided them to me.

17. The failure to include Starbucks in sales planning for major customers reflects Kraft's lack of commitment to promoting the Starbucks brand in the most favorable light, and is typical of the way Kraft has approached the relationship. For instance, I recall a conversation in

which Mr. Prchlik casually mentioned that he had recently conducted a sales call with a major retailer in the Northwest. I asked him why he had not invited me, since I could have easily joined him. Mr. Prchlik responded that he spent most of the time during the sales call talking about Maxwell House, and very little about Starbucks. This excuse only made things worse, since he should be spending a significant portion of his sales calls talking about Starbucks. It was disconcerting to learn, not only that I had been excluded from a sales call with a major retailer, but that he spent very little time promoting Starbucks during the call in my absence.

### Kraft's Failure to Involve Starbucks in Sales Calls and Sales Presentations

18.     I am familiar with the provisions of the R&G Agreement that give Starbucks the right to consult on sales action plans, the right to review sales presentations, and the right to attend sales calls to customers selected by Starbucks. In substance, this means that Starbucks has a right to be involved at all stages with the presentation of Starbucks products to customers. For the largest retail accounts, the presentation of Starbucks products should be a joint effort, which would effectively distinguish Starbucks products from the many other Kraft-owned, mass-market brands that Kraft distributes.

19.     Best practices for the industry dictate that Kraft make several different types of sales calls to the Top 9 customers each year. First, Kraft should make an annual sales call to each customer to review the prior year's sales and to present forward looking sales plans for the upcoming year. These annual sales calls typically occur in the first quarter of each year. Next, Kraft should meet with each Top 9 customer on a quarterly basis to discuss more detailed sales planning, including assortment (*i.e.*, which stock keeping units (SKUs) the customer will carry) and merchandising (*i.e.*, which products the customer will display, feature in advertisements, and offer price reductions for). Finally, there may be a number of other sales calls to discuss, for

example, new product launches, new packaging, or other specific sales programs. Therefore, Kraft should typically meet with each of its Top 9 customers on average from three to five times a year. In connection with each of these sales calls, I understand that Kraft prepares a sales presentation or sales deck that is tailored to the specific retail customer and to the sales promotions or programs that will be discussed.

20. During the time that I have overseen Starbucks' relationship with Kraft under the R&G Agreement, I have repeatedly asked Mike Prchlik to include me in all sales calls with the Top 9 customers. Starbucks' attendance at these customer sales calls is essential to ensure that its brand is properly presented and to ensure that Kraft – which has a portfolio of dozens of brands, including several coffee brands – devotes sufficient time and attention to the Starbucks business.

21. Despite these requests, Kraft has regularly failed to inform me that such sales calls were scheduled or it has informed me about these calls so late that it was impossible for me or any other Starbucks employee to attend. As a result, I have been able to attend only a small fraction of the sales calls that Kraft makes to Starbucks' Top 9 customers each year. Based on a review of my calendar entries, I attended a total of six customer sales calls in 2010; a total of five customer sales calls in 2009; and a total of four customer sales calls in 2008. Although other individuals at Starbucks have occasionally attended sales calls, I would generally attend those as well. I believe, therefore, that this accounts for almost all of the sales calls in which Starbucks has been included during the period.

22. Kraft has excluded Starbucks from sales calls, even when the purpose of those calls was to launch crucial sales initiatives. For instance, in the latter part of 2009, Starbucks launched a new flavored coffee product called Natural Fusions, which was one of the most

important sales initiatives for the year.  Although I understand that Kraft made sales calls to each of the Top 9 customers to discuss Natural Fusions, I was invited to attend only one of those sales calls.

23.     I have also repeatedly asked Mike Prchlik that Starbucks be given an opportunity to review and comment on the sales presentations that will be made to Top 9 customers at sales calls.  Kraft has refused to comply with this request.  In the rare instances that Kraft has invited me on sales calls to Top 9 customers, Kraft would typically provide me with the sales presentation for the call on the morning of the actual sales call, making it impossible for me to meaningfully comment on and edit the presentation.  When I have not been invited to sales calls – which is the far more common occurrence – Kraft would typically not provide Starbucks with an advance copy of the sales presentation at all.

24.     Although Mike Prchlik states in his declaration that Kraft included Starbucks in the review and approval process of sales presentation "templates" for major initiatives, he fails to state that these "templates" are tailored to each of the specific Top 9 customers and that the final sales presentations are different than the templates that Starbucks may have been shown.  As set forth above, Kraft regularly failed to provide final sales presentations for major initiatives to Starbucks prior to showing them to Top 9 customers, or provided these presentations so late as to make meaningful review and comment impossible.  Kraft also regularly failed to provide the sales presentations used in the annual or quarterly sales calls with Top 9 customers to Starbucks in advance of these sales calls.  The opportunity to comment on such templates therefore provides no substitute for the direct, customer-by-customer involvement in sales efforts that Starbucks has repeatedly requested.

  I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

                _____
                LARRY CRONIN

January 10, 2011