IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

KRAFT FOODS GLOBAL, INC.,

        Plaintiff,

   v.

STARBUCKS CORPORATION,

       Defendant.

Civil No. 10-9085 (CS)
ECF Case

## DECLARATION OF MICHELE WAITS

I, Michele Waits, declare under penalty of perjury:

1.      I am the vice president of marketing for the Consumer Packaged Goods ("CPG")

Group at Starbucks Corporation.  I joined Starbucks in June 2008 as director of marketing of the

CPG Group, a position I held until December 2010.  In my capacity as director of marketing, I

spent all of my time on the Kraft relationship and was responsible for Starbucks' base CPG

business, which consists of developing and managing the product, packaging, and promotions of

Starbucks' CPG products.  In my current position, I continue to oversee various aspects of the

Kraft-Starbucks relationship.

2.      Starbucks is the world's leading producer of super-premium coffee.  While the

core of Starbucks' business is our network of coffeehouses around the world, we also sell coffee

and a variety of other products through a variety of other channels, including the consumer

packaged goods (CPG) channel.

3.      Currently, the distribution of Starbucks roast and ground coffee in the CPG

channel is handled by Kraft, under a March 29, 2004, Supply and License Agreement ("R&G

Agreement"). The R&G Agreement gives Kraft the right to distribute Starbucks packaged roast and ground coffee in certain outlets in the CPG channel, including grocery stores, discount chains, and pharmacies. That agreement also obligates Kraft to ensure that Starbucks is fully involved with marketing and sales efforts related to distribution in the CPG channel. When I joined Starbucks in 2008, I reviewed the R&G Agreement, and I am generally familiar with its terms.

<u>STARBUCKS' REPUTATION AND BRAND EQUITY</u>

4. Starbucks is one of the most well-known and respected brands in the world. Our reputation and brand equity are critical to our long-term success. The Starbucks brand is associated with a premium quality and an outstanding customer experience. The brand is the company's most important asset.

5. Customers expect the same high level of quality from all Starbucks products, whether they purchase coffee from one of our coffeehouses or buy packaged coffee in a grocery store. Starbucks has a critical interest in the way in which Starbucks products are marketed and sold, the way in which the Starbucks products are displayed, and the manner in which the Starbucks brand is used in advertising and promotion. If the Starbucks brand is portrayed in a way that is inconsistent with the premium nature of the brand, it can be damaging to all segments of our business. The R&G Agreement expressly recognizes the importance of protecting the Starbucks brand and the goodwill associated with it.

6. To protect our brand equity, Starbucks follows a set of policies, known as "guard rails," that are designed to ensure that the brand is never portrayed in a manner that is inconsistent with our overall image. These guard rails apply to all aspects of our business, such

2

as the launch of new products, the design of our coffeehouses, and any third-party advertising and promotion featuring the Starbucks brand.

7.      We have stressed to Kraft the importance of portraying the Starbucks brand in a manner that complies with our guard rails and is consistent with our reputation for quality and our premium position in the market for super-premium coffee.  In particular, we have made it clear to Kraft that we cannot have Starbucks packaged coffee portrayed as simply one of the dozens of Kraft brands sold in supermarkets.  We have also insisted that Kraft comply with its obligations under the R&G Agreement to obtain our approval of all advertising and promotion.

8.      Throughout the time I have been at Starbucks, Kraft's performance as a distributor of our products has been unacceptable.  Given the value of the Starbucks brand and its unique brand position, Kraft's effort to market and promote that brand in the CPG channel has not, in my view, been commercially reasonable.  Instead, Kraft has simply been content to "milk" the Starbucks brand while concentrating on the marketing and promotion of its own brands.  It is my understanding that Kraft treats Starbucks as just one brand in its overall beverage portfolio for purposes of its financial targets and employee bonuses.

9.      That approach has not only meant that Starbucks' performance in the CPG channel has been poor, which it has been for most of the period of the R&G Agreement.  It also means that Starbucks has missed an opportunity to maximize the value of its brand in the CPG channel; to the contrary, Kraft's presentation of the Starbucks brand in the CPG channel has eroded the brand's equity.  From my perspective, Starbucks' deep unhappiness with Kraft's performance made it a business imperative for Starbucks to terminate the parties' agreement.

## KRAFT'S PERFORMANCE UNDER THE R&G AGREEMENT

10.    During the period I served as director of marketing for the CPG business, I had regular contact with Kraft.  On most days, I would speak to my counterparts at Kraft at least once, and we would frequently conduct conference calls or in-person meetings.   I continue to have regular contact with Kraft in my current position.

11.    For the entire time that I have worked for Starbucks, we have been frustrated in our efforts to establish a working relationship that would take advantage of Starbucks unique expertise in the premium coffee business.  In many ways, large and small, Kraft has taken a high-handed and dismissive approach that gives too little weight to Starbucks' ideas and concerns.

12.    Kraft has demonstrated a lack of rigor and initiative in its approach to marketing and management of the Starbucks brand, as well as a lack of responsiveness to legitimate concerns Starbucks has raised.  Furthermore, Kraft has not been sufficiently attentive to the need to comply with Starbucks' guard rails and to protect our reputation and brand equity.

13.    Many of the issues identified below were raised, by Starbucks, in meetings of the Management Committee.  In most cases, Kraft was nonresponsive to our concerns.  In some instances, Kraft would comply with our request—but usually only after we have pressed Kraft executives repeatedly over several months, if not longer.

14.    When the Starbucks-Kraft relationship began in 1998, Starbucks brands were driving business expansion in excess of 20% each year.  Initially, there were significant gains in sales of Starbucks coffee in the CPG channel, primarily through expansion into additional stores and growth in the number of stock-keeping units (SKUs), growing sales to $174 million in 2000. Almost immediately, however, the growth began to decline.  Although Starbucks' overall business continued to grow by more than 20% each year (a rate Starbucks maintained every year

4

until 2007), growth of the Kraft-managed CPG business fell significantly, first to the low teens and then to single digits.  With the exception of 2005, when we introduced Seattle's Best Coffee ("SBC"), growth of the Kraft-managed CPG business was below 20% each year.

15.     Since the R&G Agreement was signed in 2004, Starbucks has lost market share in the premium coffee CPG category every single year, resulting in Starbucks' market share falling from nearly one-third to just over one-quarter in just five years.  If Kraft had maintained Starbucks' market share in the CPG channel from near its peak in 2002, CPG revenues would currently be $100 million higher.  Furthermore, Kraft has failed to counteract this loss of market share, and in many instances has exacerbated it.  For instance, as discussed further below, Kraft unilaterally decided to increase the prices on Starbucks products in early 2008 – despite what I understand to be Starbucks' strong recommendations against it – which immediately led to a sharp decline in Starbucks' market share.

16.     During the period in which Kraft has overseen Starbucks's CPG business, the growth of that business has fallen well behind the growth of Starbucks' business as a whole. While Starbucks' annual revenues have grown more than 80% since the beginning of Starbucks' Fiscal Year 2005, R&G revenues have grown approximately 35% over that same period.

17.     Below are several specific examples of problems that we have had with Kraft's performance under the R&G Agreement.  Each of these relates to Kraft's specific obligations under the agreement.

<u>Kraft's Failure to Obtain Advertising Approval from Starbucks</u>

18.     I am familiar with the provision of the R&G Agreement that requires Kraft to submit for Starbucks' approval all proposed promotions, advertisements, packaging, and other programs and materials that support Starbucks' CPG products, during the concept and initial

5

planning stages and again at the final stage prior to launch.  *See* R&G Agreement ¶ 9.A(ii).  Despite Starbucks' repeated requests, Kraft has failed to do so on numerous occasions.  Several specific examples follow.

19.     In 2009, Kraft entered into discussions with Safeway regarding an in-store merchandising program called the Safeway BCA Program, which involved Starbucks CPG Products appearing in an advertisement alongside other Kraft brands such as Velveeta, Miracle Whip, and Planters.  Kraft did not notify Starbucks of this program or send Starbucks related promotional or advertising material until the day before final approval for this program was necessary.  Given Starbucks' close attention to the way our brand is presented, it is often difficult or impossible to obtain approval of such a plan in such a quick period of time.  In addition, if we are given only one day to approve a program, we are denied the opportunity to work with Kraft and the retailer to execute the program in a way that is mutually beneficial.  In this particular instance, despite our previously having informed Kraft on numerous occasions that Starbucks was not to be portrayed as simply another Kraft brand, we still had to demand that Starbucks be separated from other Kraft brands in the final execution.

20.     In 2010, Kraft engaged in discussions with Kroger Supermarket to participate in the Kroger "Look What's New" Program.  I have reviewed the declaration of Lori Acker, which was submitted with Kraft's motion for a preliminary injunction.  Ms. Acker claims that Starbucks was "an integral part of the final execution" of this program.  *See* Declaration of Lori Acker ¶ 25 [Dkt. No. 21] (filed Dec. 23, 2010) ("Acker Decl.").  This claim is not accurate.  The e-mail attached to her declaration relates only to our approval of a solo insert that was one part of the program.  Kraft presented this program to Starbucks as several disjoined pieces, and often demanded our approval within one day.

21.     For instance, in January 2010, Kraft submitted a proposed coupon book featuring several Starbucks brands to Starbucks and requested approval that same day.  The proposed coupon book contained several problems, as it promoted Starbucks coffee in ways that were inconsistent with our brand image.  Among many other problems, the proposed coupon book featured the Starbucks logo in a collage of logos of other Kraft brands, which is inconsistent with our repeatedly-stated demand that Starbucks not be promoted as just another Kraft brand.

22.     Similarly, on February 18, 2010, Jennifer Bowles of Kraft wrote to Monique Heineman, Associate Product Manager for the Starbucks CPG group, demanding approval of two significant components of the "Look What's New" program—an on-line coupon and in-store signage—by the following day.  (A copy of this e-mail exchange is attached as Exhibit A.)  Neither component was mentioned in the January 15, 2010, e-mail attached to Ms. Acker's declaration, so we were not aware that they were part of the program.

23.     Ms. Heineman responded that "we are having a bit of a miss … [because] no one on the Starbucks side ever approved the program in totality because we are getting it in pieces."  She further requested, "In the future, let's partner to approve the full extent of the program before launching into the executional pieces."  Luisa Robinson of Kraft responded, on February 19, 2010, "Going forward when we have programs such as this that include multiple elements with different deadlines, we'll give you an overview of the program and various elements up front so that you can have a full and complete picture of what the program entails and what you can expect."  *See* Exhibit A.  That did not happen, as the next example illustrates.

24.     In 2010, the grocery store chain Publix prepared a television advertisement featuring Starbucks CPG products.  Kraft, however, did not provide Starbucks with notice of that advertisement prior to its broadcast, nor did it ever explicitly discuss with Starbucks that the

advertisement was planned or being released.  Instead, Starbucks became aware of the advertisement because of a reference to a Publix television ad in one of Kraft's monthly reports.

25.     After learning of the advertisement, Ms. Heineman reminded Kraft that (as the R&G Agreement requires) Starbucks needed to approve the final execution of specific promotional programs.  Ms. Heineman further reminded Kraft that similar incidents had happened "multiple times this year," and offered to reach out to Publix directly to "speed up communication."  Kraft did not permit us to contact Publix directly regarding the commercial, which is consistent with Kraft's practice of refusing to let us communicate directly with its retail partners regarding the content of third-party advertising and promotion.  Instead, Kraft informed us that, according to Publix, the advertisement had already been released, but not yet aired.  I responded that, if the commercial was "brand-inappropriate," we would want it "changed or off-the-air."  I also stated that we expected to see a finished version the following day (which was the day before the commercial was scheduled to air) because there was a possibility "that it will need to be pulled."  (This e-mail exchange is attached as Exhibit B.)

26.     To underscore the seriousness of the situation, Greg Price, Vice President of the Starbucks CPG group, sent another e-mail message 30 minutes after mine informing Kraft that the situation was "not acceptable," and again reminding Kraft that the R&G Agreement requires Starbucks' approval of advertisements before they air.  Mr. Price demanded that he be able to view the advertisement before it went on the air.  When Kraft did not respond, he informed Kraft that, because Starbucks had not had the opportunity to approve it, his "expectation and requirement at this stage is that [the commercial] will not be aired until and unless we agree it is within legal and brand guardrails."

27.     Kraft did not comply.  Publix aired that advertisement, despite the fact that it had neither been reviewed nor approved by Starbucks.  Moreover, it took almost a week for Kraft to provide a copy of the advertisement to Starbucks, despite our urgent requests.  Once we finally had an opportunity to review the advertisement, we discovered that it promoted our coffee at a price point that was inconsistent with our reputation as the leading maker of super-premium coffee.  Had we known this fact in advance, we would not have approved the commercial.  Because it aired without our approval, it potentially damaged our brand equity.

28.     As the attached e-mail messages make clear, Ms. Acker's claim that Mr. Price "had approved the Publix programs including this Publix TV initiative in November of 2009, [and] he did not inform Kraft that he expected executional approval of the Publix TV promotion until after the Publix TV ad went live" is not accurate.  Declaration of Lori Acker ¶ 24. Starbucks' expectation, which we have communicated to Kraft on numerous occasions, is that we would see, discuss, and have the ability to approve any advertisements before they are aired, as required by the R&G Agreement.  It is shocking to me that, over five years into our relationship under that agreement, Kraft claims not to know what our expectations are.

29.     In 2010, Kraft entered into discussions with Publix about placing Starbucks' advertising and promotional materials on the website www.cookingwithkraft.com.  The program was scheduled to launch beginning in July 2010.  On April 21, 2010, Kraft contacted Ms. Heineman and asked for her approval the following day.  After Ms. Heineman asked legitimate questions about the program, Kraft tried to go above her head and told me that Greg Price had already approved it.  In fact, Mr. Price had never approved the program; instead, he had approved a separate "buy one, get one free" program.  (The e-mail I received indicated that the program had been discussed at the "Publix/Starbucks 2010 customer meeting."  Starbucks,

however, had not been invited to that meeting.)  The execution proposed by Kraft presented Starbucks on a Kraft website dedicated to recipes, stories, and promotions of Kraft brands. Starbucks ultimately did not approve release of this execution because of the presentation or inference of Starbucks as a Kraft brand.  (This e-mail exchange is attached as Exhibit C.)

30.     In September 2010, Kraft provided us with a proposed coupon book containing coupons for Starbucks coffee that was to be distributed in Safeway stores.  Again, Kraft gave us only 24 hours to review and comment.  Faced with this unrealistic deadline, I again communicated my concerns to my counterparts at Kraft.  Specifically, I told Kraft that 24-hour deadlines needed to be "a rare exception," and that Starbucks needed the opportunity to review all aspects of promotional material because "it is critical for us to feel comfortable with the environment we're being presented in."  Again, I found it difficult to understand how, after working together for years, my Kraft counterparts did not understand the importance of brand equity to Starbucks and the need to give us sufficient time to review advertising and promotional material.  (This e-mail exchange is attached as Exhibit D.)

31.     In her declaration, Ms. Acker states that many of these advertisements were run by third parties, not by Kraft.  *See* Acker Decl. ¶ 22.  This provides no excuse for Kraft's failure to obtain necessary approvals.  As I understand it, Starbucks provides Kraft a license to use its trademarks in connection with its performance of its obligations as a distributor.  One condition on that license is that Kraft obtain from Starbucks appropriate approvals for all advertising using Starbucks trademarks.  Starbucks has made clear to Kraft over and over again that its approach with respect to advertising approvals has been careless and contrary to its obligations.  Starbucks cannot communicate with retailers directly as to the content of advertising and promotional materials, so we are forced to rely on Kraft to protect our brand image.  Kraft has failed to do so.

10

<u>Kraft's Failure to Provide Starbucks with Regular Marketing/Brand Plans</u>

32.     In my experience, it is critical for any brand to develop an overall marketing/brand plan, and I have repeatedly pressed Kraft to provide us with such a plan. During my tenure, Kraft has *never* provided us with a comprehensive marketing plan.  Instead, Kraft has sent us documents that purport to be marketing plans, but are instead much smaller and limited in scope.  In some cases, we have had to ask Kraft repeatedly even for basic and standard documents that help us to manage our business on a day-to-day basis.  For instance, it was not until May 2010—after numerous requests from us, dating back to 2008—that Kraft provided us with a merchandising calendar, which is a very basic and standard document outlining our trade promotion plans that Kraft should have provided us on a regular basis.  When she sent me the merchandising calendar, Ms. Acker stated, "We look forward to 'new beginnings'!"  Unfortunately, these "new beginnings" did not materialize.  (This e-mail exchange is attached as Exhibit E.)

<u>Kraft's Failure to Ensure Starbucks CPG Products are Adequately Stocked and Featured</u>

33.     I am familiar with the provision of the R&G Agreement that requires Kraft to meet certain Measurement Criteria concerning placement and stocking of Starbucks CPG Products in retail channels.  *See* R&G Agreement Schedule 8.B(i).  Among other requirements, Kraft has an obligation to use commercially reasonable efforts to maximize rack placement of Starbucks CPG Products (i.e., preserve shelf space) on *Starbucks*-branded racks; to minimize the presence of non-Starbucks branded products on Starbucks racks; and to minimize out-of-stocks of Starbucks CPG Products.

34.     These requirements are designed to ensure the proper display of Starbucks CPG Products, to promote the Super Premium branding of Starbucks CPG products, and to increase sales of Starbucks CPG Products.

35.     Kraft has failed to ensure that Starbucks Products are adequately stocked in retail channels.  Exhibit F, for example, includes pictures from December 2010 of a major grocery store in Seattle, Washington.  Many of the shelves marked "Starbucks" are completely empty.  Other shelves marked "Starbucks" or "Seattle's Best" actually contain the products of a *competitor* brand.  Over half of the total shelf space is filled with non-Starbucks, non-super-premium brands.

36.     Kraft also has not ensured that Starbucks products are properly featured in retail channels.  Exhibit G, for example, includes pictures from June 2010 of a major grocery store in Fort Mohave, Arizona in which Starbucks CPG products are being displayed on a *Kraft*-branded display rack.  A Kraft-branded display rack does not promote the branding of *Starbucks* CPG products.  Furthermore, this particular display featured images of children.  At Starbucks, we are very careful not to market our products to children, so the display was a clear violation of our guard rails.

37.     Finally, Kraft has not ensured that Starbucks CPG Products are prominently distinguished as a unique super-premium brand in retail channels. Exhibit H is a photo from September 2010 of the coffee aisle in a major grocery store in Seattle, Washington.  Starbucks' new product line, Natural Fusions—which Starbucks recently designed a special marketing campaign to promote—is not even displayed; rather, a shipping box of Natural Fusions was left on the top shelf, in such a way that no customers could actually purchase an individual bag.  The

poor shelf placement and shelf presence that Starbucks CPG Products have received under Kraft's control of the Starbucks brand is obvious in each picture.

38.     Independent research confirms that Kraft's performance in this area has been unacceptable.  In 2009, third-party independent research found that at least one SKU was out of stock in 42% of audited stores—well above the target of 25% in the R&G Agreement.  That same year, its rack placement was only 69%, compared to a target of 80% in the R&G Agreement.

<u>Kraft's Failure to Provide Critical Information to Starbucks</u>

39.     I am familiar with the provision in the R&G Agreement that requires Kraft to provide Starbucks with detailed marketing and trade budgets, including key assumptions, monthly to the extent such reports are regularly generated by Kraft, otherwise quarterly, as well as the provision that requires Kraft to provide us with market research and consumer data.  *See* R&G Agreement ¶ 9.B(iv), (v).

40.     Kraft has never provided Starbucks with monthly marketing or trade budgets; in fact, Kraft has never provided me with a detailed trade budget of any sort.  For most of my tenure at Starbucks, Kraft Finance has provided Starbucks Finance with a spreadsheet that sets forth only the total, "rolled-up" dollar amounts representing trade, customer incentives, advertising and promotion, with little program detail.  I repeatedly requested that Kraft provide Starbucks with detailed budgets that show among other things, specific marketing programs and trade promotions, by retail customer.  In the second quarter of 2010, Kraft began to provide Starbucks with budgets containing more detail; however, these budgets still fell short of our expectations.

41.     In addition, Kraft has failed to provide Starbucks with all market research and consumer data, as required by the R&G Agreement.  For instance, in May 2010, Kraft provided us with a "Brand Health Tracker," which it described as a "regular tracker for brand and ad awareness" that was "conducted in waves throughout the year.  Although Kraft is contractually required to regularly provide these reports, and appears to field these trackers quarterly, we have only received three such reports in the last three years.  Concerned that Kraft was failing to disclose other reports, Mr. Price asked for a list of all research conducted in the previous year on Starbucks and SBC.  We never received such a list. (This e-mail exchange is attached as Exhibit I.)

<u>Kraft's Unilateral Decision to Raise Prices</u>

42.     In early 2008, shortly before I started at Starbucks, Kraft unilaterally decided to raise prices on the sale of Starbucks CPG coffee.  Based on my conversations with my colleagues, it is my understanding that Starbucks strongly recommended against the price increase before it occurred, but that Kraft proceeded.

43.     After expressing initial reluctance even to discuss the price increase, Kraft eventually agreed to discuss the price increase and to provide us with data and market research relating to the increase.  Yet the research they provided did not consider all of the factors Kraft should have considered prior to making a decision to raise prices, including impact of lost distribution and competitive response.

44.     After the price increase went into effect, our market share declined significantly.  We pressed Kraft to take steps to address this drop in sales, but Kraft insisted that the decline was in line with the internal projections prepared prior to the increase.  At no time did Kraft demonstrate a sense of urgency or concern regarding the increase.  Eventually, Kraft was forced

14

to spend additional amounts to allow retailers to reduce the price of Starbucks products in stores; finally, after we had pressured Kraft for months, Kraft agreed to reverse the price increase. Unfortunately, Starbucks has never recovered the market share driven largely by this ill-advised price increase.

<u>Kraft's Unannounced Decision to Cut Trade Spending</u>

45.     Toward the end of 2009, we again attempted to make clear to Kraft executives that their performance under the R&G Agreement was unacceptable.  For example, in December 2009, Greg Price sent an e-mail to Kraft executives in which he stated, "I'm getting concerned about the state of our Packaged Coffee business," and requested a meeting to discuss the situation.  *See* Exhibit K.  He added, "There is urgency to do this."  Two weeks later, to emphasize his concern, Mr. Price sent another e-mail to Kraft stating that he was "shocked" at the performance of the business.  He further described the situation as "pretty much a disaster." Kraft executives initially communicated that they understood how dire the situation was, but their performance did not improve.

46.     In fact, in first quarter of Starbucks' Fiscal Year 2010 (*i.e.*, October through December 2009)—and continuing into the second quarter—Kraft made the unilateral decision to cut trade spending to less than half the amount it spent in the first quarter of Starbucks' Fiscal Year 2009.  Kraft did not advise Starbucks that it would cut its trade spending for this quarter. To the contrary, Kraft had projected spending of more than twice the amount it actually spent. As a result of this cut in trade spending, Starbucks had a very poor quarter.

47.     Even as Starbucks' CPG business suffered, Kraft showed a lack of initiative and failed to undertake necessary actions to turn the business around.  As with the 2008 price

increase, Kraft failed to initiate sales or marketing programs sufficient to counteract the sharp loss in Starbucks' market share.

48.     Starbucks' business has improved following the disastrous first quarter 2010 because of Starbucks-led initiatives – and not because of any steps Kraft has taken independent of Starbucks.  In particular, Starbucks rolled out four new product streams that drove its CPG business in 2010:  Starbucks 20 oz. bagged coffee, Starbucks Natural Fusions line, Starbucks Pike Place Roast and Morning Joe.  Notwithstanding the sales generated by these new product streams in the last three quarters of 2010, however, Starbucks still missed its sales targets for 2010, given the poor performance in the first quarter.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Michele Waits

# EXHIBIT A

Case 7:10-cv-09085-CS    Document 40    Filed 01/14/11

## Michele Waits

| | |
|---|---|
| **From:** | Monique Heineman |
| **Sent:** | Tuesday, August 24, 2010 4:22 PM |
| **To:** | Monique Heineman |
| **Subject:** | FW: FOR YOUR APPROVAL- Kroger Look What's New Program |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Orange |
| **Attachments:** | RedPlum Example.jpg; starbucks80x100.gif |

---

**From:** Luisa.Robinson@kraft.com [mailto:Luisa.Robinson@kraft.com]
**Sent:** Friday, February 19, 2010 11:55 AM
**To:** Monique Heineman
**Cc:** jennifer.bowles@KRAFT.COM
**Subject:** RE: FOR YOUR APPROVAL- Kroger Look What's New Program

Monique,

Let's set aside some time today/Monday to discuss further to make sure we are addressing all your concerns. The Kroger Look What's New program was presented to Michelle and Greg in December as part of the overall PPR plus up. I will need to confirm with Kristine which elements of the program were discussed.

**PROGRAM ELEMENTS**
- Look What's New Solo Insert Mailer, 6 MM circ [This was approved by Leigh]
- Catalina 250 M prints, target is premium coffee HH that have not purchased SBUX
- In store signage 1200 stores
- Online coupon 50 M distributed via Kroger.com, Redplum.com and affiliated network
We would like to ship incremental PPR shippers in support of the program, however the PPR shippers were not created for the program. The PPR shippers are available year round to all of our grocery customers.

**QUESTIONS**
In answer to your questions:
- **Is the online coupon the only online portion of this program?**  Yes.
- **How do people get to the online coupon?** The primary way people will access this coupon is via Redplum.com, it will also be hosted on the kroger.com website and other Red Plum affiliated websites. We have used Red Plum in the past for a Memorial Day execution.
- **What does it say to drive people to the coupon?** See (2) attachments.  The consumer selects the offers they are interested and then the site sends them to the coupon which they can print off.
- **What triggers people getting this?** Consumers go to the site and select the offers they are interested in.
- **What is the in store signage – where is it located?**  Why does it say $0.00? The in store signage is located in aisle. The price is $0.00 because the price may vary according to the region
- **They go in and some purchase triggers Catalina (all consumers?  Just some?)** The Catalina offer is targeted for premium coffee buyers who have not purchased SBUX in the last year.

**GOING FORWARD**

Going forward when we have programs such as this that include multiple elements with different deadlines, we'll give you an overview of the program and the various elements up front so that you can have a full and complete picture of what the program entails and what you can expect.

Thank you.

**Luisa Robinson**
Sr. Associate Brand Manager- Starbucks
Tel: (914) 425-6546
Fax: (914) 425-4488

---

**From:** Monique Heineman [mailto:MHeinema@starbucks.com]
**Sent:** Friday, February 19, 2010 11:54 AM
**To:** Bowles, Jennifer A
**Cc:** Robinson, Luisa I
**Subject:** RE: FOR YOUR APPROVAL- Kroger Look What's New Program

Thank you Jennifer,

Is the online coupon the only online portion of this program? How do people get to the online coupon? What does it say to drive people to the coupon? What triggers people getting this?

What is the in store signage – where is it located? Why does it say $0.00?

Here is what I understand is part of the Kroger Look What's New program where we are highlighting PPR from our past emails:
Insert drives awareness out to Kroger consumer
They go in and some purchase triggers Catalina (all consumers? Just some?)
Kroger in bringing in extra PPR shippers for the event (how many?)
There is an online coupon

I feel like I understand the pieces but it seems like I may be missing how this is all a conjoined program. When I spoke with Michele regarding this program last time, she and Greg did not approve the program, they approved doing PPR plus ups. Where we are having a bit of a miss is that no one on the Starbucks side ever approved the program in totality because we are getting it in pieces.

In the future, let's partner to approve the full extent of the program before launching into the executional pieces. The way we are approaching it now, I am working to put the program and tactics through review, but then we essentially need to re-approve the program with the new tactics as the items come through.

Thanks!
Monique

---

**From:** jennifer.bowles@KRAFT.COM [mailto:jennifer.bowles@KRAFT.COM]
**Sent:** Thursday, February 18, 2010 2:41 PM
**To:** Monique Heineman
**Cc:** Luisa.Robinson@kraft.com
**Subject:** FOR YOUR APPROVAL- Kroger Look What's New Program

Hi Monique- attached are the final 2 components of the 3/7 Kroger Look What's New Program for your review:

1) Online Coupon:

<<SBUXKrogerOnline.pdf>>
- Pls. note that the Starbucks logos that appear "ghosted" behind the Save message are a security measure to prevent duplication. This is required and was used on the '09 Walmart All You Online coupon.

Case 2:10-cv-09085-CAS-Document 40   Filed 01/14/11   Page 21 of 52

- I think you will want to revise the copy to "Save $1.00 when you buy any (1) one 12 oz. or 20 oz. package of Starbucks® coffee". Pls. confirm.

- The logo doesn't appear to be 1/2" high. Given the limited space, do you want to increase the logo if it means the package shot would need to be reduced?

2) In Store Signage:

<<KLWN Starbucks.jpg>>
- This is the standard template for the program. Normally they only allow a package shot to be featured, however we were granted special permission to include the Starbucks logo given the familiar green logo doesn't appear on the PPR package. We would prefer if the logo didn't overlap with the bag however.

Pls. provide feedback by end of day tomorrow (Fri) if possible.

Thanks! Jennifer

1/4/2011

# EXHIBIT B

**Michele Waits**

| | |
|---|---|
| **From:** | Greg Price |
| **Sent:** | Wednesday, June 09, 2010 1:25 PM |
| **To:** | Greg Price; lacker@Kraft.com; Prchlik, Mike D; Michele Waits |
| **Cc:** | Kristine.Glancy@kraft.com; Mark Fordham |
| **Subject:** | RE: Publix TV event - 6/10 through 6/16 |
| **Importance:** | High |

All,

Have not heard if / when we're going to be able to review this.

Therefore, I must state that Starbucks has not had the opportunity to approve this execution, and so we do not approve it. Our expectation and requirement at this stage is that it will not be aired until and unless we agree it is within legal and brand guardrails.

Greg

---

**From:** Greg Price
**Sent:** Wednesday, June 09, 2010 9:35 AM
**To:** Greg Price; 'lacker@Kraft.com'; 'Prchlik, Mike D'; Michele Waits
**Cc:** 'Kristine.Glancy@kraft.com'
**Subject:** RE: Publix TV event - 6/10 through 6/16

Hi,

When will we see this today?

Greg

---

**From:** Greg Price
**Sent:** Tuesday, June 08, 2010 6:37 PM
**To:** 'lacker@Kraft.com'; Prchlik, Mike D; Michele Waits
**Cc:** 'Kristine.Glancy@kraft.com'
**Subject:** FW: Publix TV event - 6/10 through 6/16
**Importance:** High

All,

This is not acceptable. Our full expectation, was that we would see, discuss, and have the ability to approve this before it ever went into the market (as our contract requiress, and as is common practice in our partnership).

We need to see it, immediately, before it goes on air. Please do what it takes to share it with us tomorrow.

Greg

---

**From:** Michele Waits
**Sent:** Tuesday, June 08, 2010 6:08 PM
**To:** 'Kristine.Glancy@kraft.com'
**Cc:** sivonne.davis@kraft.com
**Subject:** RE: Publix TV event - 6/10 through 6/16

**Importance:** High

Hi KG,

Thanks for the email and the quick follow-up. Monique already communicated this so I won't repeat what she wrote, but I would just like to stress that, going forward, we need to assume that any of our customer marketing executions have to be reviewed thru Greg – even if the vehicle or program has been approved, it's all about the execution and the execution itself has to be approved. Especially anything that is broadly consumer-facing, like TV.

What's at stake here is both the need for SBUX legal review and also a need for SBUX (including KFT) to have a say in how its brand is being represented. While this is certainly a sticky situation because this execution is being led by the customer, if the execution is deemed "brand-inappropriate", SBUX will definitely want it changed or off-the-air. As you know, there's a lot at stake in protecting the brand and its premium image and this is one area of extremely high sensitivity/no compromises – especially given the medium. That being said, I'm hopeful that the TV ad is done in a way that is brand appropriate AND effective for Publix. Have you seen it – and do you think there's risk?

We are going to have to see the ad as soon as possible. Since there is a chance that it will need to be pulled, I think we're all much better off seeing it sooner rather than later, no? If it's slated to be on-air on Thursday, I'm assuming that we can see a finished version tomorrow - ?

Please let me know...
Thank you,
MW

---

**From:** Kristine.Glancy@kraft.com [mailto:Kristine.Glancy@kraft.com]
**Sent:** Tuesday, June 08, 2010 3:58 PM
**To:** Michele Waits
**Cc:** sivonne.davis@kraft.com
**Subject:** FW: Publix TV event - 6/10 through 6/16
**Importance:** High

Michele-
I wanted to f/u with you directly on the Publix TV spot. I reached out to the team and unfortunately they found out that Publix completed and released the TV spot already. It is a product shot with price point under the guise of a breakfast thematic. The team is working with Publix to get us the spot as soon as possible (I would expect next week). Unfortunately the spot begins this Thursday, and we will not have a chance to review. Publix (the customer) was under the impression when it was approved, they had the approval to run, and did not think about circling back with our teams for the appropriate approvals. The team has communicated to Publix the need for legal review in the future.

If you have any questions, please let me know.

Thank you
Kristine

---

**From:** Monique Heineman [mailto:MHeinema@starbucks.com]
**Sent:** Tuesday, June 08, 2010 12:09 PM
**To:** Glancy, Kristine A; Watlington, Shenika N; Robinson, Luisa I
**Cc:** Tara Aylmer; Michele Waits
**Subject:** RE: Publix TV event - 6/10 through 6/16
**Importance:** High

Hi Kristine,
Can you let me know what you have found out on this program?  Is there someone on the Publix team that I can reach out to directly to speed up communication?

Greg confirmed he approved this in theory. Unfortunately, we've seen multiple times this year that this doesn't mean the tactic is approved without review of the execution. Without additional information on the tv spot or something to review, Greg has decided we aren't approved to proceed in running it. I know this is a frustrating situation to be in again, in the future I think it would be beneficial if we work together so that programs don't get hung up like this.

Thanks,
Monique

**From:** Kristine.Glancy@kraft.com [mailto:Kristine.Glancy@kraft.com]
**Sent:** Monday, June 07, 2010 3:42 PM
**To:** Monique Heineman; Shenika.Watlington@kraft.com; Luisa.Robinson@kraft.com
**Cc:** Tara Aylmer; Michele Waits
**Subject:** RE: Publix TV event - 6/10 through 6/16

I will f/u with the team

**From:** Monique Heineman [mailto:MHeinema@starbucks.com]
**Sent:** Monday, June 07, 2010 4:51 PM
**To:** Glancy, Kristine A; Watlington, Shenika N; Robinson, Luisa I
**Cc:** Tara Aylmer; Michele Waits
**Subject:** RE: Publix TV event - 6/10 through 6/16

Thanks Kristine – understand Greg's approval on the program. I'm assuming the tv spot contains the Starbucks name or logo, if I am incorrect, please let me know. We still need to review this through our Legal team if it has our name and logo. Has this been accomplished through another channel already?

Monique

**From:** Kristine.Glancy@kraft.com [mailto:Kristine.Glancy@kraft.com]
**Sent:** Monday, June 07, 2010 1:26 PM
**To:** Monique Heineman; Shenika.Watlington@kraft.com; Luisa.Robinson@kraft.com
**Cc:** Tara Aylmer
**Subject:** RE: Publix TV event - 6/10 through 6/16

Monique-
The TV spot was one of the elements approved back in November 2009 between Greg, Mike and Lori when we went back in with the plus-up programming for Publix. Please check back with Greg, who should be familiar with this program.

Thanks
Kristine

**From:** Monique Heineman [mailto:MHeinema@starbucks.com]
**Sent:** Monday, June 07, 2010 3:37 PM
**To:** Watlington, Shenika N; Glancy, Kristine A; Robinson, Luisa I
**Cc:** Tara Aylmer
**Subject:** Publix TV event - 6/10 through 6/16

Hi team,
We noticed on the monthly close documents that there is a Publix feature and tv scheduled for 6/10 - 6/16. This is great!

Can you please let us know what is running on the tv portion?  None of our team remembers approving any video to run.  Know you are aware, but as a quick reminder anything needs to be approved by our team prior to being used publically.  We'd hate to impact the ability to run the tv feature because of a slip in reviews.

Thanks,
Monique
associate product manager | US CPG Packaged Coffee | Starbucks Coffee Company
(206) 318-8049 phone
(206) 318-3324 fax

# EXHIBIT C

**Michele Waits**

| | |
|---|---|
| **From:** | Greg Price |
| **Sent:** | Wednesday, April 21, 2010 4:01 PM |
| **To:** | Monique Heineman |
| **Cc:** | Michele Waits |

**Subject:** RE: Thursday EOD: Publix Cooking with Kraft.com Digital Coupons

Monique,

I'm honestly not remembering this, and if this was presented, it was not presented with any context.

I'm not against the coupon, so if we can find a way to deliver it that does not look like a "Kraft" sub-brand, I'm fine…But we always maintain brand separation between Starbucks and Kraft / other brands….and they should know that.

Greg

---

**From:** Monique Heineman
**Sent:** Wednesday, April 21, 2010 12:09 PM
**To:** Greg Price
**Cc:** Michele Waits
**Subject:** FW: Thursday EOD: Publix Cooking with Kraft.com Digital Coupons

Hi Greg,
The team at Kraft is looking for approvals on creative for a program with Publix called "Cooking with Kraft".  They said you approved this tactic when you were out in Tarrytown – does this sound familiar?  Did you feel you approved the program with enough context to determine this was an absolute "go" as is?

My concern is that it is a Kraft site for the banner of Kraft brands and my understanding has been that we wanted to avoid representing Starbucks as a Kraft brand.  Here is the website: http://www.cookingwithkraft.com/

Please let me know you thoughts.

Thank you,
Monique

---

**From:** Luisa.Robinson@kraft.com [mailto:Luisa.Robinson@kraft.com]
**Sent:** Wednesday, April 21, 2010 10:08 AM
**To:** Monique Heineman
**Cc:** jennifer.bowles@KRAFT.COM
**Subject:** RE: Thursday EOD: Publix Cooking with Kraft.com Digital Coupons

Monique,

Sivonne will be sending an email out to Greg reminding him of the details surrounding this program, but given our creative constraints, I'm sending out to you for feedback.

Thank you

1/4/2011

**Luisa Robinson**
Sr. Associate Brand Manager- Starbucks
Tel: (914) 425-6546
Fax: (914) 425-4488

---

**From:** Robinson, Luisa I
**Sent:** Wednesday, April 21, 2010 1:01 PM
**To:** 'Monique Heineman'
**Cc:** Bowles, Jennifer A
**Subject:** Thursday EOD: Publix Cooking with Kraft.com Digital Coupons
**Importance:** High

Per the Publix/Starbucks 2010 customer meeting, we aligned with Publix to participate in the Publix Cooking with Kraft.com website and digital coupon program. This program is happening in July, October and December. The attached is for the July execution, October and December executions will likely be around Starbucks Natural Fusions. The first page for each brand shows 2 layouts (Homepage Right Tile and Savings Tile). The 2 pages that follow for each brand show the communication within the context of the web pages. The last page shows the coupons themselves. We would like to have feedback by **Thursday EOD.**

**STARBUCKS RECOMMENDED CHANGES**

- Homepage Right Tile-
  - Only show 1 package of PPR.
  - Change offer copy to "12 oz. or 20 oz". If you want to include 11 oz too, I would change this to read "11 oz or larger (excluding 16 oz.)"
  - Remove "Yet" from "Try Pike Place Roast, Our Smoothest Coffee"
  - Add outside border to create more premium feel
- Savings Tile-
  - Change offer copy to "12 oz. or 20 oz". If you want to include 11 oz too, I would change this to read "11 oz or larger (excluding 16 oz.)"
  - Add outside border to create more premium feel
- Coupons-
  - Make House Blend and PPR packages the same size.
  - Add a (R) after Starbucks.
  - Update offer language to match Homepage/Savings Tile language.

Thank you,
Luisa

1/4/2011

# EXHIBIT D

| | |
|---|---|
| **From:** | Michele Waits |
| **Sent:** | Thursday, September 30, 2010 1:51 PM |
| **To:** | Monique Heineman; Luisa.Robinson@kraft.com; jared.simon@kraft.com; cherie.beach@kraft.com; priscilla.flores@kraft.com; sivonne.davis@kraft.com; Tara Aylmer |
| **Subject:** | Holiday Coupon Booklet |

Hi Everyone,

Thanks for moving this forward and for addressing our feedback. A couple of thoughts:

1. Given the scrutiny that each and every marketing piece receives, 24 hour turnaround is tough for us to deliver on. I understand that there are many constituents involved, but would prefer to see this happen as a rare exception
2. Monique has already nicely articulated this, but I also wanted to give context for our requests to see other elements of the coupon booklet. It all comes down to brand presentation. While our brand presence is affected primarily by the panels we're in, the look and feel of the book – especially the cover – also has an impact on our brand image/consumer's perception of our brand. In the worst, most exceptional case, the cover art, copy or overall presentation could be so off-brand that we would consider pulling our coupon in order to preserve our premium brand perception. So, while I know that it's often difficult to get this from our partners or our agencies, it is critical for us to feel comfortable with the environment we're being presented in

We appreciate very much your efforts to make this happen with our agencies and partners.

Please let me know if you have thoughts, questions or concerns.

Best,

Michele

**From:** Luisa.Robinson@kraft.com [mailto:Luisa.Robinson@kraft.com]
**Sent:** Wednesday, September 29, 2010 8:23 PM
**To:** Monique Heineman; jared.simon@kraft.com
**Cc:** Cherie.Beach@kraft.com; Priscilla.Flores@kraft.com; sivonne.davis@kraft.com; Michele Waits; Tara Aylmer; jared.simon@kraft.com
**Subject:** FINAL REVIEW: Holiday Coupon Booklet

Monique-

Here is the revised layout- they did a great job of incorporating all of the creative feedback. Please note they sent this out before the legal feedback was sent thru so it doesn't reflect the following changes:

1. In the copy right line, place a space between "©" and "2010" .
2. In the copyright line, remove "©" in "Not valid at Starbucks Cafes."

We've asked them to go ahead and make these changes.

In terms of the coupon booklet front/back cover- we still have not received that art. The agency has requested it but at this point they are not even certain if its been completed and can't guarantee when we will receive it.  Are we able to approve creative release first thing tomorrow morning with a follow up to share the cover creative at a later date? I've asked the agency if we can pull out of the coupon booklet if at a later date we review the cover art and don't feel comfortable with it. I'm waiting for answer on this question and will post you as soon as I hear back.

Also, technically final approval was due today EOD. I'm working on seeing if we can get an extension until tomorrow morning.

**Luisa Robinson**
Sr. Associate Brand Manager- Starbucks

Tel: (914) 425-6546
Fax: (914) 425-4488

---

**From:** Monique Heineman [mailto:MHeinema@starbucks.com]
**Sent:** Wednesday, September 29, 2010 8:35 PM
**To:** Monique Heineman; Robinson, Luisa I; Simon, Jared C
**Cc:** Beach, Cherie O; Flores, Priscilla; Davis, Sivonne M; Michele Waits; Tara Aylmer
**Subject:** RE: FEEDBACK NEEDED: Holiday Coupon Booklet

Legal feedback is as follows:

1. In the copy right line, place a space between "©" and "2010" .
2. In the copyright line, remove "©" in "Not valid at Starbucks Cafes."

Thank you,
Monique

---

**From:** Monique Heineman
**Sent:** Wednesday, September 29, 2010 10:06 AM
**To:** 'Luisa.Robinson@kraft.com'; jared.simon@kraft.com
**Cc:** Cherie.Beach@kraft.com; Priscilla.Flores@kraft.com; sivonne.davis@kraft.com; Michele Waits; Tara Aylmer
**Subject:** RE: FEEDBACK NEEDED: Holiday Coupon Booklet

Compiling all of our feedback into one email chain.

Below is feedback from our team – I have not received Legal feedback and approval, so will send that through when it arrives.  I have asked for it to be expedited.

1. What does the coupon booklet look like?  We need the context the coupon will be placed in to approve this.
2. Headline does not make sense from a consumer perspective.  We have been trying to get consumers away from thinking of Starbucks as a gift or entertaining only option.  Recommend changing to the "Bring Happiness Home for the Holidays" headline used in the FSI
3. Font of headline does not need to align with the Holiday Guide as the creative does not align.  Headline font is fine as is.
4. Use packages with large logos – there is not enough Starbucks branding in the piece
5. Remove ingredient images – overall piece is too busy with the background and consumers will see ingredients at shelf on the shelf banners etc
6. Available in the coffee aisle line – "A" is too large vs other copy.  Would recommend changing to "Look for it in the coffee aisle" just in case there are a few stores without Fusions up yet.
7. Bottom right section – too busy for consumer to take any of it in.  Remove "pairs with" as this is the least likely to drive sales vs flavor and tasting notes of the coffee.  Ensure Vanilla is the same green as the package.
8. Coupon – coupon copy is not our normal NYASC copy.  Is there a reason this is different and now has the Kraft copyrights?

Please let me know if you have any questions

Thank you,
Monique
-------------------------------------------------------------------------
**From:** Luisa.Robinson@kraft.com [mailto:Luisa.Robinson@kraft.com]
**Sent:** Wednesday, September 29, 2010 6:07 AM
**To:** Monique Heineman
**Cc:** Cherie.Beach@kraft.com; Priscilla.Flores@kraft.com; sivonne.davis@kraft.com; jared.simon@kraft.com
**Subject:** RE: FEEDBACK NEEDED: Holiday Coupon Booklet

All,

Please note- Priscilla noticed that the copy for Caramel and Cinnamon were actually the same in the Holiday Coupon Booklet. This is incorrect. The Cinnamon copy should align to that in the Sunset advertorial which is as follows:

FLAVOR PROFILE: Bold, fragrant cinnamon
PAIR WITH: Coffee cake, dark chocolate with almonds
TASTING NOTES: Warm and spicy

**Luisa Robinson**
Sr. Associate Brand Manager- Starbucks
Tel: (914) 425-6546
Fax: (914) 425-4488

--------------------------------------------------------------------------------
**From:** sivonne.davis@kraft.com [mailto:sivonne.davis@kraft.com]
**Sent:** Wednesday, September 29, 2010 8:44 AM
**To:** Luisa.Robinson@kraft.com; Monique Heineman
**Cc:** Cherie.Beach@kraft.com; Priscilla.Flores@kraft.com; jared.simon@kraft.com
**Subject:** RE: FEEDBACK NEEDED: Holiday Coupon Booklet

Piece looks great, so glad we could fast adapt for customer!

I would add two things to the feedback:

- We may need to update the "available" message on this to what we are doing currently in National Print, per legal and Howard S feedback (not sure since I think this is clearly going to one customer) - Monique??

- If possible take the Vanilla petal off of the bag so it's not blocking "flavored ground coffee"

SD

**Sivonne Davis**
Senior Brand Manager, Starbucks
Kraft Foods, Beverage Sector
p: 914-425-4459 / f: 914-425-4488
e: sivonne.davis@kraft.com

--------------------------------------------------------------------------------
**From:** Luisa.Robinson@kraft.com [mailto:Luisa.Robinson@kraft.com]
**Sent:** Tuesday, September 28, 2010 6:22 PM
**To:** jared.simon@kraft.com; Monique Heineman
**Cc:** Cherie.Beach@kraft.com; Priscilla.Flores@kraft.com; sivonne.davis@kraft.com
**Subject:** RE: FEEDBACK NEEDED: Holiday Coupon Booklet

Team,

Please note- we'd originally asked for feedback by EOD tomorrow to give the SBUX team a minimum of 24 hours to respond- if there is an ability to provide feedback sooner that would be great- but if not, Jared is aligned to the SBUX team providing feedback tomorrow.

Thank you.

**Luisa Robinson**
Sr. Associate Brand Manager- Starbucks
Tel: (914) 425-6546
Fax: (914) 425-4488

---

**From:** Simon, Jared C
**Sent:** Tuesday, September 28, 2010 6:17 PM
**To:** Robinson, Luisa I; Monique Heineman
**Cc:** Beach, Cherie O; Flores, Priscilla; Davis, Sivonne M
**Subject:** RE: FEEDBACK NEEDED: Holiday Coupon Booklet

Hi –

I just got online as I was in-air most of the afternoon.

The coupon booklet is Safeway led, and it is a multi-manufacturer booklet.

The booklet will be placed in three locations at each Safeway store:
Dry Grocery (potentially beverage/coffee aisles; may vary by store)
Refrigerated Section
Frozen Section

If possible, we would like to get final feedback today as files are supposed to be finalized and released today. I will request extension to tomorrow morning if needed.

Thank you all for your help on this.

Jared

---

**From:** Robinson, Luisa I
**Sent:** Tuesday, September 28, 2010 5:42 PM
**To:** Monique Heineman
**Cc:** Beach, Cherie O; Flores, Priscilla; Davis, Sivonne M; Simon, Jared C
**Subject:** Re: FEEDBACK NEEDED: Holiday Coupon Booklet

Monique,
I am following up with the CDT team I will let you know as soon as I hear back. Thanks

On Sep 28, 2010, at 4:57 PM, "Monique Heineman" <MHeinema@starbucks.com> wrote:

Hi Luisa,

Just to confirm, this is part of a Safeway coupon booklet.  Is it a Safeway driven coupon booklet or a Kraft driven coupon booklet?  Do you know where it will be placed in the stores?

Thank you!
Monique

---

**From:** Luisa.Robinson@kraft.com [mailto:Luisa.Robinson@kraft.com]
**Sent:** Tuesday, September 28, 2010 1:29 PM
**To:** Monique Heineman
**Cc:** Cherie.Beach@kraft.com; Priscilla.Flores@kraft.com; sivonne.davis@kraft.com;

jared.simon@kraft.com
**Subject:** FEEDBACK NEEDED: Holiday Coupon Booklet

Attached is the creative for the Holiday Coupon I mentioned during our team call today. The page will be part of a larger Holiday Coupon booklet. Program timing is weeks 44 to 48 and will have a circ 1.5 MM, over 1,000 coupon books per Safeway store (average) with in store distribution refresh week 46.

Please note the art borrows heavily for the Sunset advertorial which I've attached for reference (073010 Starbucks.pdf file)

**KRAFT FEEDBACK**
- Note table background is consistent with the background used in the rest of their Holiday guide.
- For the  "FLAVOR PROFILE, PAIR WITH, TASTING NOTES" ? The fonts used in this piece do not match that of the Sunset insert that was shared. The ask is that they match to the font to what used in the Sunset advertorial
- The  "GIVE.SHARE. LOVE" headline is Harrington- which I'm unclear as to if it's an approved font. Assuming it's not reco is that they use P22 Stanyan Bold for Headline copy.
We'd like to get final feedback to them by tomorrow EOD.
Thank you.

**Luisa Robinson**
Sr. Associate Brand Manager- Starbucks
Tel: (914) 425-6546
Fax: (914) 425-4488

# EXHIBIT E

**From:**        Monique Heineman
**Sent:**        Tuesday, January 11, 2011 9:19 AM
**To:**          Michele Waits
**Subject:**     FW: SBUX/KFT MCM Follow-Ups
**Attachments:** Copy of SBUX Over Under MCM Followup .xlsx


For your files

---

**From:** Michele Waits
**Sent:** Wednesday, June 23, 2010 12:46 PM
**To:** Monique Heineman; Mani Pandher; Tara Aylmer; Larry Cronin; Leigh Bris; Adam Hewitt; Martha McElroy-Rojas
**Subject:** FW: SBUX/KFT MCM Follow-Ups


Behold!
It's an historic event!
I can't believe my eyes!

IT'S A MERCH CALENDAR!!!!

Enjoy!
MW

---

**From:** Michelle Gallagher
**Sent:** Wednesday, June 23, 2010 9:48 AM
**To:** Greg Price; Michele Waits
**Subject:** RE: SBUX/KFT MCM Follow-Ups


Let me know if this version works okay.

---

**From:** Greg Price
**Sent:** Tuesday, June 22, 2010 4:08 PM
**To:** Michelle Gallagher
**Subject:** FW: SBUX/KFT MCM Follow-Ups
**Importance:** High


Michelle,

Can you print this out in a readable (formatted) form for Michele and I?

Thanks,

Greg

---

**From:** Colleen.Flaherty@kraft.com [mailto:Colleen.Flaherty@kraft.com]
**Sent:** Monday, June 21, 2010 2:01 PM
**To:** Greg Price
**Cc:** sivonne.davis@kraft.com; Abigail.Coleman@kraft.com; lacker@Kraft.com; Mike.Prchlik@kraft.com; Shenika.Watlington@kraft.com
**Subject:** RE: SBUX/KFT MCM Follow-Ups


Greg,
    Attached is the file my team put together with regard to the customer reset time windows, the '09 vs. '10 overlap calendar by customer and the top customer snapshot one pager.  Mike and I would be happy to take you through the data if you have any questions.  We'll plan on sharing updates on a regular basis. We'll follow up and loop you in on our major sales calls where it makes sense to engage.  Deanie Mike

and I were with Kroger this past week and we continue to engage them on Fusions and a work around solution to avoid the plug and pull. We believe we will be successful with an in and out execution on Fusions prior to the formal shelf cut in during KOMPASS. We'll keep you informed as we lock up plans.

Let's stay connected, don't hesitate to reach out if you have any questions. (Office: 914-425-6839, Cell: 508-801-4665)

Regards,
CF

---

**From:** Acker, Lori B
**Sent:** Saturday, May 29, 2010 7:30 AM
**To:** Elsner, Deanie D; mgass@starbucks.com; ayoungs@starbucks.com; tdavenport@starbucks.com; myaeger@starbucks.com; 'Martha McElroy-Rojas'; Flaherty, Colleen F; Jenkins, Jennifer; Hall, Karyn D; Bealle, Kim W; Boehme, Michael W
**Cc:** Greg Price; Michele Waits; hcaterson@starbucks.com; Davis, Sivonne M; Coleman, Abby R
**Subject:** SBUX/KFT MCM Follow-Ups

All,
Thank you all for a valuable Management Committee Meeting this week and for your support to continue the positive momentum. We especially appreciated the candor of the discussion that will lead to an even stronger partnership. Below please find the 10 top priorities identified with detailed follow-ups, owners and timing. Please let us know if we missed anything.

We look forward to "new beginnings"!

Thanks Again,
The SBUX, SBC and KFT Working Teams

| Action | Accountable | Timing |
|---|---|---|
| **1. Identify SBC Business Potential**<br>• Benchmark and develop a 3-year plan to deliver BHAG with appropriate volume/spending levels and KPIs for volume, share and margin (achieved via cost savings) | Abby<br>Heather | July 15 |
| **2. Expand Sales Interaction**<br>• Communicate Kraft Coffee Strategy & Vision with top KFT Sales Teams<br>• Share customer interaction plan & agree on where/how Starbucks should participate (e.g. Sam's/WM)<br>• Provide customer reset calendar and sales call dates<br>• Provide customer merchandising calendar (quarterly) | Colleen<br>Greg<br>Brian | June 24 |
| **3. Optimize Reporting**<br>• SBUX team to audit current data & meetings and submit a POV on ideal metrics/meetings<br>• Develop a revised list of reports & meetings<br>• SBUX develops a plan to share within the SSC | Lori<br>Greg | July 1 |
| **4. Maximize Cross-Channel Marketing**<br>• Review 18 month Retail Calendar and align integrated marketing (March coffee event+) across organizations | Terry<br>Kim<br>Greg<br>Michele | July 15 |
| **5. Define SBUX Brand Ambition and Align Plan**<br>• Create an inspiring brand ambition for the total SBUX brand; break out for Via, Packaged Coffee<br>• Align on SBUX/Kraft "joint plan"; resolve Club, spending, productivity assumptions | Lori<br>Michele | July 15<br><br>June 14 |
| **6. Monitor Natural Fusions**<br>• Gain alignment on Fusions reporting (when on-shelf, ACV status, sales rate) | Sivonne<br>Colleen<br>Michele | June 7 |

| | | |
|---|---|---|
| • Leverage SBUX Licensed Store relationship or Kroger top-to-top to get NF placed (incrementally) before Jan | Greg<br>Brian | |
| **7. Prioritize Packaging Structure**<br>• Conduct an innovation forum with partners and agencies to develop ideas/concepts/share learnings<br>• KFT to commission competitive pkg intelligence | Stuart<br>Karyn | 6/21 |
| **8. Increase Innovation Focus**<br>• Tom, Greg, Annie and Mary to meet on SBUX innovation priorities; determine if and where KFT can help | Greg | 7/15 |
| **9. Confirm and Deliver Productivity**<br>• Confirm '11 productivity to fund advertising support<br>• Develop plan to restore SBC margins | Mike<br>Brian | 7/1 |
| **10. Pursue Shelf Reinvention**<br>• Broaden scope to category vs. brand<br>• Obtain shopper insights quickly | Colleen<br>Stuart<br>Lori | 7/1 |

# EXHIBIT H



**STARBUCKS COFFEE**

**STARBUCKS COFFEE**





# EXHIBIT I





STARBUCKS FRESH ROASTED
COFFEE PIKE PLACE

12 OZ

**8.99** ea

75¢/oz PER OUNCE

simple pleasures

more time together

KRAFT

visit kraftfoods.com

# EXHIBIT J



# EXHIBIT K

**Michele Waits**

| | |
|---|---|
| **From:** | Greg Price |
| **Sent:** | Thursday, June 10, 2010 3:52 PM |
| **To:** | karyn.hall@kraft.com; Michele Waits; Monique Heineman; Leigh Bris; Mani Pandher |
| **Cc:** | lacker@Kraft.com; sivonne.davis@kraft.com; Abigail.Coleman@kraft.com |
| **Subject:** | RE: Brand Health Tracker Report |

Karyn,

Thank you. This is very interesting!

Question. Unless my memory is failing me (which it has been known to do on rare occasions), I've never seen this research before, but it appears there were 3 other waves? I am wondering if there is other SBUX research we are not aware of.

Is it possible to get a list of everything that's been done in the last year and/or is slotted to come in on SBUX and SBC to make sure we are not missing anything else?

Thanks,

Greg

---

**From:** karyn.hall@kraft.com [mailto:karyn.hall@kraft.com]
**Sent:** Friday, May 07, 2010 11:28 AM
**To:** Greg Price; Michele Waits; Monique Heineman; Leigh Bris; Mani Pandher
**Cc:** lacker@Kraft.com; sivonne.davis@kraft.com; Abigail.Coleman@kraft.com
**Subject:** Brand Health Tracker Report

Starbucks Team,
Attached is the Brand Health Tracker report that was referenced in our situation assessment discussion. This is our regular tracker for brand and ad awareness as well as brand health measures for our brands and competition. The report is conducted in waves throughout the year and we will have an update to this report in a few months. Please reach out with any questions!

Thanks,
Karyn

# EXHIBIT L

**From:** Greg Price
**Sent:** Thursday, December 03, 2009 8:15 AM
**To:** Michele Waits; lacker@Kraft.com
**Cc:** Lorraine.Hansen@kraft.com; Michelle Gallagher
**Subject:** 2010 Plan Gap, Budgets, and Gap Closers

Lori and Michele,

I'm getting concerned about the state of our Packaged Coffee business, and am requesting a meeting and work session next week in which we update our view of where the business is going, finalize identification of gaps between our 2 plans, and develop recommendations to close gaps both against each other and plan.

There is urgency to do this on 2 fronts: 1) In-market performance is becoming increasingly alarming…Oct Packaged Coffee shipments were soft, and November appears even worse. Moreover, I've just seen the November Nielsen #'s, in which our positive share momentum appears to have evaporated.; 2) On the SBUX side, we've got to submit our 3+9 Budget update before year end; on the Kraft side I believe you also need to lay out an updated business view before the start of your Fiscal year.

Net, I think it's important that we come together to level set a common understanding of the business, the gaps between our plans, identify challenges and opportunities, and solidify a plan together to address these.  Either separately or with this, would like to understand our plans by key customer for next year as well (which we did not get to cover in MCM).

My understanding was that a meeting around gap / gap closers and next steps… was in the works, but I do not yet  seen anything on my calendar around this, so by this I am going to ask Michelle Gallagher to set up time next week, at HIGH URGENCY, to discuss this.

Michelle, can you please set up 2&1/2 hours, ideally, say, next Thursday, and ideally as a video conference. Please work with Lori and Michele on who key attendees should be.

Thanks!

Greg